Arlyne M. LAMBRECHT, Plaintiff-Appellant,

HERITAGE INSURANCE COMPANY and Medicare,
Involuntary-Plaintiffs,

v.

ESTATE OF David D. KACZMARCZYK and American
Family Insurance Group, Defendants-Respondents.

Supreme Court

*No. 99–0821. Oral argument October 31, 2000.—Decided
March 23, 2001.*

2001 WI 25

(Also reported in 623 N.W.2d 751.)

806

For the plaintiff-appellant there were briefs by *Eric S. Darling* and *Schmidt, Darling & Erwin*, Milwaukee, and oral argument by *Eric S. Darling*.

For the defendants-respondents there was a brief by *Mary Lee Ratzel, Sherry A. Knutson* and *Peterson, Johnson & Murray, S.C.*, and oral argument by *Sherry A. Knutson*.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This case is on appeal from an order of the Circuit Court for Waukesha County, James R. Kieffer, Circuit Court Judge. The appeal is here on certification from the court of appeals. Wis. Stat. (Rule) § 809.61 (1997–98).[1] Arlyne M. Lambrecht, the plaintiff, brought this action against the Estate of David D. Kaczmarczyk and American Family Insurance Group, the defendants, alleging that David D. Kaczmarczyk, the defendant-driver, negligently operated his automobile, causing the plaintiff bodily injury. The circuit court granted the defendants' motion for summary judgment. The plaintiff appealed. We reverse the order of the circuit court.

¶ 2. The complaint states a simple cause of action based on negligence. Negligence is ordinarily an issue for the fact-finder and not for summary judgment. Summary judgment is uncommon in negligence actions, because the court "must be able to say that no properly instructed, reasonable jury could find, based on the facts presented, that [the defendant-driver] failed to exercise ordinary care." *Erickson v. Prudential Ins. Co.*, 166 Wis. 2d 82, 93, 479 N.W.2d 552 (Ct. App.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

1991) (quoting *Shannon v. Shannon*, 150 Wis. 2d 434, 442, 442 N.W.2d 25 (1989)). Ordinarily a court cannot so state. As the Fifth Circuit Court of Appeals explained in *Gauck v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965):

> Because of the peculiarly elusive nature of the term "negligence" and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where historical facts are concededly undisputed.[2]

¶ 3. Negligence may, like other facts, be proved by circumstantial evidence, which is evidence of one fact from which the existence of the fact to be determined may reasonably be inferred.[3] This case involves circumstantial evidence and the issue is whether negligence may be inferred from the facts. One rule of circumstantial evidence is the doctrine of res ipsa loquitur. Although the doctrine of res ipsa loquitur is an evidentiary rule[4] that ordinarily arises at trial in determining the instructions the circuit court should give the jury, the issue was raised in this case at the

---

[2] *See also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2729 at 533 (1998). The Wisconsin summary judgment rule is patterned after Federal Rule 56. *See* West's Wis. Stats. Ann. § 802.08 (1994). In interpreting our rules that are patterned after federal rules, this court looks to federal cases and commentary for guidance.

[3] W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 39 at 242 (5th ed. 1984).

[4] *University Dodge, Inc. v. Drott Tractor Co., Inc.*, 55 Wis. 2d 396, 401, 198 N.W.2d 621 (1972).

summary judgment stage. The issue presented is whether in an automobile collision case a defendant negates the inference of negligence based on res ipsa loquitur and obtains a summary judgment simply by establishing that the defendant-driver suffered a heart attack at some point during the course of the collision, even though the defendant is unable to establish at what point the heart attack occurred.

¶ 4. This case raises the question of the effect of a defendant's going forth with evidence of non-negligence when the complainant's proof of negligence rests on an inference of negligence arising from the doctrine of res ipsa loquitur.

¶ 5. To put the issue in context, we note that Professor Prosser has written that of all the res ipsa loquitur issues, the procedural effects of the defendant's evidence of a non-actionable cause have given the courts the most difficulty.[5] Our cases prove this point all too well.

¶ 6. We conclude that the defendants in the present case are not entitled to summary judgment. First, the evidence that the defendant-driver suffered a heart attack at some point during the collision does not by itself foreclose to the plaintiff the benefit of an inference that the defendant-driver was negligent; the evidence of the heart attack does not completely contradict the inference of negligence arising from the collision itself. Second, the defendants' evidence at summary judgment of the defendant-driver's heart attack is not sufficient to establish as a matter of law the affirmative defense known as "illness without fore-

[5] William L. Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 265 (1936).

809

warning."[6] The defendants have the burden of persuasion of this affirmative defense.[7]

¶ 7. Because the record does not conclusively show, as a matter of law, that the defendant-driver's unforeseen heart attack preceded the collision and caused him to commit an act or omit a precaution that would otherwise constitute negligence, we conclude that genuine issues of material fact relating to negligence are in dispute, and the defendants should not be granted summary judgment.

¶ 8. We reverse the order of the circuit court granting the defendants' motion for summary judgment.

## I

¶ 9. For the purposes of the motion for summary judgment, the facts of the collision are not in dispute, although the facts relating to the defendant-driver's heart attack are. In their motion for summary judgment the defendants summarized the facts, and in her

---

[6] The law in Wisconsin is that when a driver, through sudden illness or loss of consciousness, commits an act or omits a precaution that would otherwise constitute negligence, such act or omission is not negligence if the occurrence of such illness or loss of consciousness was not preceded by sufficient warning that a person of ordinary intelligence and prudence ought reasonably to foresee that he or she, by driving an automobile, would subject the person or property of another or of himself or herself to an unreasonable risk of injury or damage. *See Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 173 N.W.2d 619 (1970); *Theisen v. Milwaukee Auto. Mut. Ins. Co.*, 18 Wis. 2d 91, 99, 118 N.W.2d 140, 119 N.W.2d 393 (1962); Wis JI—Civil 1021.2.

[7] *See* Brief of Defendants-Respondents at 24–25. *See also* comment to Wis JI—Civil 1021.2.

response to the motion the plaintiff agreed with the defendants' statement of facts. Furthermore, the defendants submitted an affidavit of the Waukesha police officer who went to the site of the collision shortly after the occurrence. Attached to the affidavit were the officer's accident report and the Crime Management System Incident Report; we may also rely on these reports.[8]

¶ 10. On February 8, 1996, at approximately 4:30 p.m., the defendant-driver's automobile was traveling westbound on a straight and dry road when it collided with three automobiles, two of which were in the right turn lane traveling in the same direction as the defendant-driver's automobile; these vehicles were going to turn right at the intersection and travel north. The third vehicle, the plaintiff's automobile, was either stopped at the intersection, facing south, or just starting to move when it was struck; this vehicle was going to turn left across the defendant's lane of traffic and travel eastbound.

¶ 11. One of the drivers whose vehicle was struck reported that he saw the defendant-driver in his rear view mirror coming up very fast; he could not tell

---

[8] *See* Wis. Stat. § 802.08(3) ("affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence"). The defendants submitted the affidavit and the entire attachments. Although the attachments may contain hearsay, no objection was made to them. In the absence of any objection at the circuit court, an appellate court may consider the materials presented. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2722 (1998 & Supp. 2000) and cases cited therein; 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738 (1998 & Supp. 2000) and cases cited therein.

whether the defendant-driver was attempting to shield his face from the bright sun or if the visor was down. According to the Old Farmer's Almanac, of which we take judicial notice, on February 8, 1996, sunset was at 5:15 p.m. Central Standard Time.[9]

¶ 12. The driver-defendant's automobile rear-ended the first vehicle, brushed the back bumper of the second vehicle, and skidded across a dividing median, striking the third vehicle (the plaintiff's) directly in the plaintiff's side door. On the basis of his personal observation, the police officer reported that the defendant-driver's car visor was in the down position at the site of the collision. The police officer observed that the defendant-driver's automobile left skid marks after the collision with the first car. The plaintiff claims to have sustained extensive bodily injuries.

¶ 13. When police arrived at the scene, one officer found the defendant-driver lying partially outside his front passenger door, apparently unable to breathe. The defendant-driver was not wearing a seat belt. His head and shoulders were protruding out of the right front passenger door. Soon thereafter, paramedics arrived at the scene, and found that the defendant-driver was not breathing and had no pulse. The paramedics determined that the defendant-driver was in ventricular fibrillation and defibrillated him several times. Recognizing that their efforts were unsuccessful, the paramedics transported him to the emergency room at Waukesha Memorial Hospital. Attempts to revive him were unsuccessful, and a physician pronounced the defendant-driver dead at 5:25 p.m.

---

[9] *See http://www.almanac.com* (last visited March 15, 2001); Wis. Stat. § 902.01(2)(b) authorizing judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

¶ 14. A medical examiner performed an autopsy and determined that the cause of the defendant-driver's death was arteriosclerotic cardiovascular disease, which resulted in acute cardiopulmonary arrest. In other words, the defendant-driver died of a heart attack.

¶ 15. However, medical experts (through affidavits and depositions) disagree about *when* the heart attack occurred. According to the medical examiner, the defendant-driver suffered a heart attack before the initial collision. The defendants' expert medical witness also stated to a reasonable degree of medical certainty that the heart attack occurred before the first collision. But she further stated that it was not possible in this instance for any medical expert to determine the exact time of the heart attack based on the post-collision examination; the question was one of probability and likelihood. The plaintiff's expert medical witness could not state with certainty which came first, the initial collision or the heart attack. He asserted that it would be pure speculation for anyone to say when the heart attack occurred; it was just as likely that the heart attack occurred before the initial impact as after the initial impact.

¶ 16. The defendants' medical expert stated that, regardless of when the heart attack occurred, the defendant-driver probably had between five and twenty seconds from the onset of dizziness and loss of blood pressure to losing consciousness.

¶ 17. The defendants moved for summary judgment, arguing that: (1) it was undisputed that the defendant-driver suffered a heart attack sometime before, during, or after the collision; (2) the medical testimony was inconclusive as to whether the heart attack occurred before, during, or after the collision;

and (3) it is just as likely that the heart attack occurred before the collision as it is that the heart attack occurred after the collision and that negligence caused the collision. The defendants argued that they need not prove whether the heart attack occurred before, during, or after the collision and that summary judgment was proper, because to allow the case to go forward would force the jury to speculate on the question of negligence.

¶ 18. Granting the defendant's summary judgment motion, the circuit court concluded that a res ipsa loquitur inference of negligence was inapplicable because it is just as likely that an unforeseen illness caused the collision as it is that negligence did. The circuit court reasoned that the evidence that the defendant-driver died of a heart attack at some point before, during, or after the collision would permit a jury to base a verdict of negligence on conjecture.

¶ 19. The plaintiff appealed, and this court took the appeal on certification by the court of appeals.

## II

¶ 20. This case is before the court on a motion for summary judgment. We summarize below the approach that an appellate court takes in considering such a motion.[10]

---

[10] *See, e.g., L.L.N. v. Clauder*, 209 Wis. 2d 674, 682–84, 563 N.W.2d 434 (1997); *Kafka v. Pope*, 194 Wis. 2d 234, 240, 533 N.W.2d 491 (1995); *Voss v. City of Middleton*, 162 Wis. 2d 737, 747–48, 470 N.W.2d 625 (1991); *Delmore v. American Family Mut. Ins. Co.*, 118 Wis. 2d 510, 512–13, 348 N.W.2d 151 (1984); *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981); *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980); *Leszczynski v. Surges*, 30 Wis. 2d 534, 539, 141 N.W.2d 261 (1966).

¶ 21. An appellate court reviews a decision granting summary judgment independently of the circuit court, benefiting from its analysis. The appellate court applies the same two-step analysis the circuit court applies pursuant to Wis. Stat. § 802.08(2). Specifically, a court first examines the pleadings to determine whether a claim for relief is stated and whether a genuine issue of material fact is presented.

¶ 22. If the pleadings state a claim and demonstrate the existence of factual issues, a court considers the moving party's proof to determine whether the moving party has made a prima facie case for summary judgment. If the defendant is the moving party the defendant must establish a defense that defeats the plaintiff's cause of action. If a moving party has made a prima facie defense, the opposing party must show, by affidavit or other proof, the existence of disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn that are sufficient to entitle the opposing party to a trial.

¶ 23. The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion,[11] and doubts as to the existence of a genuine issue of material fact are resolved against the moving party.[12] The court takes evidentiary facts in the record as true if not contradicted by opposing proof.[13]

¶ 24. In order to be entitled to summary judgment, the moving party, here the defendants, must prove that no genuine issue exists as to any material

---

[11] *Grams*, 97 Wis. 2d at 338.

[12] *L.L.N.*, 209 Wis. 2d at 684.

[13] *Id.*

fact and that the moving party is entitled to a judgment as a matter of law.

¶ 25. The defendants in the present case contend that the appropriate standard for reviewing the summary judgment is whether the circuit court erroneously exercised its discretion in determining that the evidence was not sufficient to remove the question of causal negligence from the realm of conjecture.

¶ 26. The defendants rest their contention on *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 20, 531 N.W.2d 597 (1995). But *Peplinski* is significantly different from the present case. *Peplinski* is not a summary judgment case. *Peplinski* involved a jury trial, and the issue was whether the circuit court should give the jury an instruction on res ipsa loquitur.[14] As the supreme court explained in *Peplinski,* the circuit court had the benefit of hearing testimony and observing the witnesses at trial. Under these circumstances of a trial, the supreme court gave deference to the circuit court's decision regarding whether to give a jury instruction on res ipsa loquitur.

¶ 27. In the present summary judgment case a decision about the applicability of res ipsa loquitur is made on the basis of a paper record of affidavits and

---

[14] The supreme court determined that the res ipsa loquitur instruction should be given when:

> (a) either a layman is able to determine as a matter of common knowledge or an expert testifies that the result which occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

> *Peplinski v. Fobe's Roofing, Inc.,* 193 Wis. 2d 6, 17, 531 N.W.2d 597 (1995).

depositions. This court and the circuit court are equally able to read the written record. Accordingly, we conclude that in this case the applicability of the res ipsa loquitur doctrine raised in the motion for summary judgment is a question of law that this court determines independently of the circuit court, benefiting from its analysis.

## III

■

¶ 28. The plaintiff has made out a prima facie case of negligence under Wisconsin law. In order to constitute a cause of action for negligence, there must exist: (1) a duty of due care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) an actual loss or damage as a result of injury. *See Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976). It is clear that duty, causation, and damages are not at issue here. The parties agree that the defendant-driver owed a duty of care. Additionally, there is no dispute as to causation: the defendant-driver's automobile collided with the plaintiff's and, if the defendant-driver was negligent, his negligence caused the plaintiff to suffer extensive physical injuries. Either the defendant-driver's conduct was negligent or it was not.

¶ 29. The complaint pleads negligence. The historical facts of the collision are set forth in the record. A reasonable inference may be drawn from the facts that the defendant-driver was negligent, contrary to the defendants' contention that no inference of negligence arose in this case. The defendant-driver was driving west, toward the sun, at 4:30 p.m. (with sunset at 5:15 p.m.) on a clear February day. A driver whose vehicle in

the right turn lane was struck by the defendant-driver reported that he observed the defendant driving very fast. The road was straight and dry. The police officer reported from personal observation that the defendant-driver's car visor was in the flipped-down position at the site of the collision. A driver whose vehicle was struck by the defendant-driver reported bright sun and could not tell whether the defendant-driver was shielding his eyes or the visor was down. There is no evidence whether the position of the visor was adequate to allow the defendant-driver to block out the sun. The defendant-driver was apparently not wearing a seat belt, and he was found protruding out of the passenger right front door from approximately just below his shoulder to the top of his head.

¶ 30. The accident report diagrammed the accident, explaining that the defendant-driver's automobile struck three automobiles. The defendant-driver's automobile struck the first automobile from behind, then brushed the bumper of a second automobile (that was also traveling west), and finally crashed into the plaintiff's automobile at an intersection. Moreover, the officer noted that there were skid marks after the first collision, possibly giving rise to the inference that the defendant-driver had applied his brakes after hitting the first automobile.

¶ 31. As we stated previously, upon a motion for a summary judgment, the inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion.

¶ 32. Examining the historical facts, we conclude that a reasonable inference to be drawn from the facts is that the defendant-driver was negligent in operating his automobile. Inferences can be reasonably drawn

that the defendant-driver's visibility was limited by the sun, he was driving fast, and his failure to wear a seat belt contributed to his failure to control his vehicle.

█

¶ 33. Discussion of reasonable inferences leads us in this case because of the contentions of the defendants to the doctrine of res ipsa loquitur. "[M]ost courts agree that [the doctrine of res ipsa loquitur] simply describes an inference of negligence."[15] Res ipsa loquitur is a rule of circumstantial evidence that permits a fact-finder to infer a defendant's negligence from the mere occurrence of the event.[16] Most frequently, the inference called for by the doctrine is one that a court would properly have held to be reasonable even in the absence of a special rule. Where this is so, res ipsa loquitur certainly need be viewed no differently from any other inference.[17] Indeed commentators have suggested that the Latin be put aside and the law speak only about reasonable inferences.[18]

█

¶ 34. The following conditions must be present before the doctrine of res ipsa loquitur is applicable: (1)

[15] 2 *McCormick on Evidence* § 342 at 435 (John W. Strong ed., 5th ed. 1999). Some Wisconsin cases use the word "presumption" in referring to the doctrine of res ipsa loquitur, but it is clear that the court is speaking of an inference.

[16] *See Weggeman v. Seven-Up Bottling Co.*, 5 Wis. 2d 503, 509, 93 N.W.2d 467, 94 N.W.2d 465 (1958). *See also* Restatement (Second) of Torts § 328D cmt. b (1965) ("A res ipsa loquitur case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.").

[17] 2 *McCormick on Evidence* § 342 at 435.

[18] *See, e.g.,* William L. Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241 (1936).

the event in question must be of a kind which does not ordinarily occur in the absence of negligence; and (2) the agency of instrumentality causing the harm must have been within exclusive control of the defendant.[19] When these two conditions are present, they give rise to a permissible inference of negligence, which the jury is free to accept or reject.[20]

¶ 35. The two conditions giving rise to the doctrine of res ipsa loquitur are present in this case. We recognize that the doctrine of res ipsa loquitur does not apply in every automobile collision case, but also recognize that the doctrine of res ipsa loquitur can apply to an automobile collision case. "It will be noted that the court has not said that res ipsa loquitur will not be applied in an automobile case. We have said that 'the rule is usually not applicable,' or 'it does not apply in the ordinary case.' Inferentially, when the unusual and extraordinary case comes along, the rule is available."[21] In this case the defendant-driver's vehicle, under the defendant-driver's exclusive control, was

---

[19] *Utica Mutual Ins. Co. v. Ripon Cooperative*, 50 Wis. 2d 431, 436, 184 N.W.2d 65 (1971).

[20] *Id. See also* Wis JI—Civil 1145. The res ipsa loquitur jury instruction states in part:

> If you find defendant had [exclusive control] of the [automobile] involved in the accident and if you further find that the accident claimed is of a type or kind that ordinarily would not have occurred had defendant exercised ordinary care, then you may infer from the accident itself and the surrounding circumstances that there was negligence on the part of the defendant unless defendant has offered you an explanation of the accident which is satisfactory to you.

[21] *See Wisconsin Telephone Co. v. Matson*, 256 Wis. 304, 310, 41 N.W.2d 268 (1950) (applying the doctrine of res ipsa loquitur in an automobile collision case). *Compare, e.g., Olson v. Milwaukee Auto. Ins. Co.*, 266 Wis. 106, 111, 62 N.W.2d 549

driving west toward the sun at 4:30 p.m. (with sunset at 5:15 p.m.) on a clear February afternoon. The road was straight and dry. The defendant-driver's vehicle struck three vehicles, two of which were moving in the same direction as the defendant-driver; the third automobile, the plaintiff's, was either stopped or just starting to move forward. In this summary judgment motion the record is viewed most favorably to the plaintiff, the non-moving party, and the court will therefore consider the evidence as satisfying these two conditions of res ipsa loquitur and as giving rise to an inference that the defendant-driver was negligent.

(1954) (concluding that "the mere fact that [a driver's] trailer skidded into [a] ditch does not establish that he was negligent").

For additional cases applying the doctrine of res ipsa loquitur or an inference of negligence in an automobile collision, see, for example, *Dewing v. Cooper*, 33 Wis. 2d 260, 265, 147 N.W.2d 261 (1967) ("mere fact that the collision occurred with the [defendant's] vehicle leaving the travelled portion of the roadway and striking the parked vehicle raises an inference of negligence"); *Bunkfeldt v. Country Mut. Ins. Co.*, 29 Wis. 2d 179, 184, 138 N.W.2d 271 (1965) (plaintiff met his burden of proof in establishing the defendant truck driver's negligence when he established that the truck invaded his traffic lane and collided with his automobile); *Voigt v. Voigt*, 22 Wis. 2d 573, 126 N.W.2d 543 (1964) (unexplained movement into complainant's lane of traffic raises inference of negligence); *Wood v. Indemnity Ins. Co.*, 273 Wis. 93, 76 N.W.2d 610 (1956) (a motor vehicle's unexplained departure from the traveled portion of the highway gives rise to the inference of negligence); *Hamilton v. Reinemann*, 233 Wis. 572, 581, 290 N.W. 194 (1940) ("the mere operation of a car upon the wrong side of the highway makes at least a prima facie case of negligence and is enough, in the absence of an explanation which the jury is bound to accept, to warrant an inference of negligence on the part of its operator").

¶ 36. Thus, at least at this point in the analysis, summary judgment cannot be granted in favor of the defendants because a reasonable inference of negligence can be drawn from the historical facts. "A primary purpose of the res ipsa loquitur rule is to create a prima facie showing of negligence thus relieving a claimant of the burden of going forward with proof of specific acts of negligence."[22]

¶ 37. To obtain a summary judgment, the defendants must establish a defense that defeats the plaintiff's cause of action. The defendants in this case produced evidence that the defendant-driver suffered an unforeseen heart attack before, during, or after the initial collision.

¶ 38. The defendants and the plaintiff disagree whether the defendants' evidence defeats the plaintiff's cause of action. The defendants assert that their defense negates the inference of negligence as a matter of law, and summary judgment for the defendant would be appropriate. The plaintiff disagrees.

¶ 39. The defendants find support for their position in one line of cases and the plaintiff in another. As the court of appeals correctly stated in the certification memorandum, the case law sends confusing and mixed signals. The certification memorandum does an excellent job of setting out these two lines of conflicting cases, and we begin by examining the two lines of cases.

¶ 40. The defendants argue that several cases establish the rule that res ipsa loquitur is inapplicable in automobile crash cases when evidence exists of a non-actionable cause, that is, a cause for which the

[22] *See McGuire v. Stein's Gift & Garden Ctr.*, 178 Wis. 2d 379, 395, 504 N.W.2d 385 (Ct. App. 1993).

defendants would not be responsible. This line of cases can be traced to *Klein v. Beeten*, 169 Wis. 385, 172 N.W. 736 (1919), which involved a directed verdict in favor of the defendant.[23] In *Klein*, the plaintiff's son was killed when the automobile driven by the defendant suddenly veered into the ditch. There was no direct evidence of driver negligence. An inspection of the car after the collision revealed a blown left front tire. No evidence was presented about whether the blow-out preceded and caused the collision or resulted from the collision. The supreme court upheld the directed verdict for the defendant, stating that the jury could only guess whether negligence caused the collision. The supreme court explained that a verdict cannot rest on conjecture:

> The jury could have done no more than guess as to whether the accident was the result of careless and negligent operation of the car or the blow-out. Verdicts cannot rest upon guess or conjecture. It is the duty of the plaintiff to prove negligence affirma-

---

[23] We can compare a summary judgment to a directed verdict at trial. The two rest on the same theory: No genuine issue of material fact needs to be resolved by the fact-finder; the moving party is entitled to have a judgment on the merits entered in his or her favor as a matter of law. 10A Charles A. Wright, Arthur L. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2713.1 at 242–43 (1998). *See also* Daniel P. Collins, Note, *Summary Judgment and Circumstantial Evidence*, 40 Stan. L. Rev. 491, 491 (1988) ("It is generally agreed that the standard [for applying Federal Rule of Civil Procedure 56(c) on summary judgment] mirrors that applied in deciding a motion for a directed verdict."). *But see* 6 *Moore's Federal Practice* ¶ 56.30[7][a-c] (3d ed. 2000) (emphasizing the differences between summary judgment and judgment as a matter of law with respect to timing and procedural posture).

tively, and while the inferences allowed by the rule or doctrine of *res ipsa loquitur* constitute such proof, *it is only where the circumstances leave no room for a different presumption that the maxim applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked.*

*Klein*, 169 Wis. at 389 (second emphasis added).[24]

¶ 41. A similar analysis was used in *Baars v. Benda*, 249 Wis. 65, 23 N.W. 477 (1945), in which no direct evidence of the defendant's negligence was offered to explain the defendant's automobile leaving the road, running into a ditch, and turning over. After the crash the steering wheel was found to be broken. The jury found the defendant negligent as to management and control.

¶ 42. The trial court changed the jury's answers and entered a judgment for the defendant, saying that the jury could only speculate whether the crash was caused by a sudden failure of the steering apparatus or by some negligent conduct on the part of the defendant. Either explanation was a possibility, but the record offered no evidence from which the jury could prefer one explanation of the crash to the other.

¶ 43. The supreme court affirmed the trial court. It refused to apply the doctrine of res ipsa loquitur because it concluded that the doctrine does not usually

---

[24] In *Hyer v. Janesville*, 101 Wis. 371, 377, 77 N.W. 729 (1898), the supreme court said:

[W]here there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it might be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that the foundation for a verdict.

apply to automobile accidents.[25] Without the benefit of the inference of negligence and without any evidence of lack of due care, the supreme court concluded that the jury could only speculate whether the accident was caused by the defendant's negligent conduct or the sudden failure of the steering wheel. Either explanation was a possibility but the record offered no evidence from which the jury could make a preference.

¶ 44. The defendants in this case also rely heavily on language in *Wood v. Indemnity Ins. Co.*, 273 Wis. 93, 76 N.W.2d 610 (1956). The supreme court stated in *Wood* that the res ipsa loquitur doctrine would not be applicable if the defense had conclusive evidence that the driver, whose automobile crashed into a tree, had a heart attack at the time of the crash, even though the time of the heart attack was not established.[26] In *Wood,* the supreme court wrote:

> In order for the facts in [*Wood*] to have paralleled those in *Baars v. Benda*, it would be necessary for the defendant to have produced conclusive testimony that Mr. Wood had sustained a heart attack at the time of the accident. *If such conclusive testimony had been produced it would not have been essential for the defendant to establish that the heart attack occurred before the jeep left the highway in order to render inapplicable the rule of res ipsa loquitur.*

*Wood,* 273 Wis. at 101–02 (emphasis added).

¶ 45. Relying on *Klein, Baars,* and *Wood,* the defendants in the present case argue that the evidence

---

[25] *Baars v. Benda*, 249 Wis. 65, 70, 23 N.W.2d 477 (1945).

[26] In *Wood v. Indemnity Ins. Co.*, 273 Wis. 93, 76 N.W.2d 610 (1956), the defendant produced no admissible evidence of a heart attack.

was conclusive that the defendant-driver had a heart attack and the doctrine of res ipsa loquitur is inapplicable. Accordingly, the defendants assert that the defendant-driver's heart attack would force a jury to engage in speculation and conjecture in determining whether there was an actionable cause (negligence) or non-actionable cause (heart attack) of the plaintiff's injuries.

¶ 46. The concept of speculation and conjecture leads the defendants to *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 531 N.W.2d 597 (1995), to support their argument. In *Peplinski* the issue at trial was whether after all the evidence had been introduced the complainant who has proved too much about how and why the incident occurred will not have the benefit of a res ipsa loquitur instruction. The *Peplinski* court ruled that because the proffered evidence offered a complete explanation of the incident, a res ipsa loquitur instruction was superfluous.[27] No one contends that the evidence in this case provides a complete explanation of the events that transpired.

¶ 47. According to the defendants, this case is the flip side of *Peplinski*: the plaintiff has proved too little.

---

[27] For other cases in which too specific an explanation was proffered, see, for example, *Utica Mut. Ins. Co. v. Ripon Cooperative*, 50 Wis. 2d 431, 184 N.W.2d 65 (1971); *Knief v. Sargent*, 40 Wis. 2d 4, 161 N.W.2d 232 (1968); *Puls v. St. Vincent Hospital*, 36 Wis. 2d 679, 154 N.W.2d 308 (1967); *Carson v. Beloit*, 32 Wis. 2d 282, 145 N.W.2d 112 (1966); *Lecander v. Billmeyer*, 171 Wis. 2d 593, 492 N.W.2d 167 (Ct. App. 1992).

The case law recognizes that even when a specific explanation is proffered, a res ipsa loquitur instruction can be given in the alternative. *See, e.g., Hoven v. Kelble*, 79 Wis. 2d 444, 448–49, 256 N.W.2d 379 (1977) (quoting *Szafranski v. Radetzky*, 31 Wis. 2d 119, 141 N.W. 2d 902 (1966)).

In *Turtenwald v. Aetna Casualty & Surety Co.*, 55 Wis. 2d 659, 668, 201 N.W.2d 1 (1972), this court set forth the test for when a complainant has proved too little and the court will not give a res ipsa loquitur instruction. The *Turtenwald* court stated that complainants cannot get a res ipsa loquitur instruction when "*no* evidence [exists] which would remove the causation question from the realm of conjecture and place it within the realm of permissible inferences." *Id.* at 668 (emphasis added).

¶ 48. On the basis of this line of cases the defendants argue that the conclusive evidence in the present case of the defendant-driver's heart attack means that this alternative non-actionable explanation of the collision is within the realm of possibility and that it is just as likely that the collision was a result of a non-actionable cause as an actionable cause. According to the defendants, the inference of negligence, if it arose at all, has been negated by conclusive evidence of the heart attack, and a finding of negligence would be conjecture. The defendants urge this court to uphold the summary judgment in their favor.

¶ 49. The plaintiff relies on a different line of cases. According to the plaintiff's line of cases, when evidence suggesting an alternative cause of action is inconclusive, res ipsa loquitur does apply and the question of negligence is for the jury.

¶ 50. Language in the *Wood* case, 273 Wis. 93, a case upon which the defendants rely, actually also lends support to the plaintiff. In *Wood* the automobile crashed into a tree. The jury was not given a res ipsa loquitur instruction regarding the defendant's negligence and the trial court granted a directed verdict for the defendant. The defendant's evidence of a heart attack had no probative value in *Wood*. The *Wood* court

reversed the judgment and remanded the cause for a new trial, stating that "the mere introduction of inconclusive evidence [about the heart attack] suggesting another cause [than negligence] will not entitle the defendant to a directed verdict."[28] The court concluded:

> We are constrained to hold that in a situation where it ordinarily would be permissible to invoke the rule of res ipsa loquitur, such as the unexplained departure from the traveled portion of the highway by a motor vehicle, resort to such rule is not rendered improper merely by the introduction of inconclusive evidence giving rise to an inference that such departure may have been due to something other than the negligence of the operator.

*Wood*, 273 Wis. at 102.

¶ 51. In keeping with this language from *Wood*, the supreme court has said that an inference of negligence can persist even after evidence counteracting it is admitted.[29]

¶ 52. The plaintiff also points to *Bunkfeldt v. Country Mutual Ins. Co.*, 29 Wis. 2d 179, 138 N.W.2d 271 (1965), in which a truck driver drove into the complainant's lane of traffic, causing a collision, and the trial court granted the complainant a directed verdict. The truck driver told the police that the truck axle started to go sideways and he could not control the truck. An inspection of the truck after the collision revealed that the dual wheel had completely separated from the vehicle. Without presenting any testimony about his own due care, the defendant argued that this

---

[28] *Wood*, 273 Wis. at 100 (quoting William L. Prosser, *The Law of Torts* § 43, at 216 n.20 (2d ed. 1955)).

[29] *Weggeman v. Seven-Up Bottling Co.*, 5 Wis. 2d 503, 510, 93 N.W.2d 467, 94 N.W.2d 465 (1958).

defect represented a non-negligent cause of the collision. The jury agreed with the defendant, but the trial court granted the complainant's motion for a directed verdict, which the trial court had previously taken under advisement.

¶ 53. On appeal, the supreme court held that the jury could draw two reasonable inferences: (1) the dual wheel separated from the vehicle before the impact, and a mechanical failure, not the truck driver's negligence, caused the collision; or (2) the truck driver's negligence caused the collision.

¶ 54. The supreme court ruled that the complainant had the burden of persuasion on the issue of the truck driver's negligence, but the truck driver had the burden of going forward with evidence that the defect causing the wheel separation was not discoverable by reasonable inspection during the course of maintenance. *Bunkfeldt*, 29 Wis. 2d at 183. The court concluded that the complainant had met his burden in establishing the truck driver's negligence when he established that the truck invaded his traffic lane and collided with his automobile.

¶ 55. The court further concluded that the evidence relating to the mechanical failure was insufficient to negate the inference of negligence that arose from the truck's invasion of the complainant's traffic lane, because a mechanical failure does not in itself establish freedom from negligence; the possibility exists that the mechanical failure was the result of faulty inspection or maintenance. Thus the inference of negligence was not negated and a directed verdict for the complainant was proper.

¶ 56. Had the supreme court followed the *Klein* and *Baars* rule in *Bunkfeldt*, it would have reversed the directed verdict for the complainant. It would have

stated that the inference of negligence arising from the incident itself was negated by evidence of a mechanical failure, the non-actionable cause was within the realm of possibility, and the jury would have had to resort to speculation.

¶ 57. The plaintiff also relies on *Voigt v. Voigt*, 22 Wis. 2d 573, 126 N.W.2d 543 (1964), in which a driver was killed when he drove his automobile into the complainant's lane of traffic. The complainant relied on an inference of negligence arising from the collision itself. The defense contended that the deceased's automobile had skidded and that this alternative non-negligent conduct explained the collision. The jury held for the complainant; the defendant appealed.

¶ 58. The *Voigt* court stated the issue as follows: "Upon whom does the duty rest to establish the negligent or non-negligent nature of the invasion of the wrong lane of traffic?" *Voigt*, 22 Wis. 2d at 583. The court answered that the complainant may benefit from the inference of negligence and the "one who invades the wrong side of the highway may be able to relieve himself of the inference of negligence, but the responsibility rests upon him to do so." *Voigt*, 22 Wis. 2d at 584.

¶ 59. The *Voigt* court acknowledged that the burden of persuasion on the issue of negligence remained with the complainant, but the driver "has the burden of going forward with evidence to prove that such invasion was nonnegligent." *Voigt*, 22 Wis. 2d at 584. Proof that the deceased driver's automobile skidded was not sufficient evidence to prove non-negligence. The defendant has the burden of going forward with evidence that the driver was exercising ordinary care while skidding to negate the inference of negligence.

¶ 60. Had the supreme court followed the *Klein* and *Baars* rule in *Voigt*, it would have granted sum-

mary judgment to the defendant. The defendant's explanation of a non-actionable cause was within the realm of possibility and would have justified summary judgment. The implication of *Voigt* was that the defendant's evidence was inconclusive and therefore did not negate the inference of negligence.

¶ 61. Finally, the plaintiff relies on *Dewing v. Cooper*, 33 Wis. 2d 260, 147 N.W.2d 261 (1967), in which a driver drove his automobile into a parked automobile, which in turn struck the complainant, pinning him between two automobiles. Evidence was introduced that the driver suffered a heart attack. The case went to the jury. The jury found for the driver, and the complainant argued on appeal that inconclusive evidence about when the heart attack occurred was not sufficient to justify the jury's verdict that the collision resulted from a non-actionable cause. The supreme court affirmed the jury verdict in favor of the driver.

¶ 62. In *Dewing* the supreme court stated that the inference of negligence raised by the doctrine of res ipsa loquitur was properly invoked. The "mere fact that the collision occurred with the [defendant's] vehicle leaving the traveled portion of the roadway and striking the parked vehicle raises an inference of negligence." *Dewing*, 33 Wis. 2d at 265 (citing *Bunkfeldt*, 29 Wis. 2d 179). The court also concluded that the evidence that the driver suffered a heart attack created a reasonable inference that the defendant was not negligent.

¶ 63. The plaintiff reads *Dewing* to hold that in a case involving an automobile collision in which the facts give rise to the res ipsa loquitur inference of negligence, the evidence, similar to that in the present case, that the driver had a heart attack at some time before, during, or after the collision does not negate the infer-

ence of the driver's negligence. On the basis of *Dewing*, the plaintiff argues her action should survive summary judgment and proceed to trial.

¶ 64. The defendants attempt to distinguish *Dewing* on the ground that the defense in *Dewing* conceded that the doctrine of res ipsa loquitur was properly invoked. This distinction is not persuasive. The *Dewing* court put its blessing on the application of the doctrine of res ipsa loquitur in that automobile collision case, stating that the collision raised the inference of the driver's negligence. The trier of fact could infer from the medical testimony that the heart attack preceded the collision and that the driver was not negligent. The driver did not, as the complainant in *Dewing* urged, have to present conclusive evidence that an unforeseen heart attack occurred before the collision. Significantly, the *Dewing* court declined to follow the defendants' argument in the present case that conclusive evidence that a heart attack had occurred at some time negated the plaintiff's inference of negligence.

¶ 65. The plaintiff concludes from this line of cases that inconclusive evidence of a non-actionable cause does not negate the inference arising from the doctrine of res ipsa loquitur. The uncertainty of the time of the heart attack in the present case means that the evidence of the heart attack is inconclusive evidence of a non-actionable cause, according to the plaintiff, and therefore presents a jury question.

¶ 66. The defendants attempt to distinguish the plaintiff's line of cases, saying that in those cases the issue is whether the defense carried its burden of going forward with evidence establishing its defense once the complainant established an inference of negligence. The defendants argue that in contrast the plaintiff in

the present case is not entitled to the res ipsa loquitur doctrine in the first instance. We disagree with the defendants.

¶ 67. Here it is undisputed that the defendant-driver driving west toward the sun on a clear February day about three-quarters of an hour before sunset drove his automobile into three automobiles. The defendant-driver's automobile visor was in the down position at the site of the collision, and skid marks indicated that the defendant-driver may have applied the brakes after the initial collision. The road was straight and dry. The defendant-driver was apparently not wearing a seat belt. A witness said the defendant-driver was driving fast. These facts are sufficient to raise an inference of negligence in the first instance.

¶ 68. In each of the cases upon which the plaintiff relies, the complainant was attempting to prove negligence by relying on an inference of negligence arising from the facts of the collision: the truck drove into complainant's lane of traffic (*Bunkfeldt*); the automobile crossed over into complainant's lane of traffic (*Voigt*); the automobile hit a parked automobile (*Dewing*). In each of these cases the issue was whether the defendant's evidence of a non-actionable cause negated the inference of the defendant's negligence upon which the complainant relied.[30] In each case the court said the inference of negligence was not negated and the issue of the alleged tortfeasor's negligence was for the trier of fact.

---

[30] *Zino v. Milwaukee Elec. Ry. & Transp. Co.*, 272 Wis. 21, 24, 74 N.W.2d 791 (1956) (the burden of going forward with the evidence to overcome the inference of negligence when res ipsa loquitur applies is on the defendant; the burden of persuasion of negligence rests with the plaintiff).

¶ 69. One possible way to resolve the apparent conflict between the defendants' line of cases and the plaintiff's line of cases is that the defendants' line of cases (*Klein, Baars,* and *Wood*) involve single-car crashes in which the automobile simply ran off the road.[31] The courts in each of the defendants' line of cases were unwilling to infer negligence from the facts of the crash. Without the inference of negligence, the complainant had no proof of negligence.

¶ 70. In contrast, the plaintiff's cases involve vehicles that struck other vehicles or persons. In particular, *Bunkfeldt* and *Voigt* involve vehicles that crossed lanes of traffic, occurrences that might be characterized as violations of statutes governing rules of the road and thus may be viewed as negligence per se cases. Negligence per se means that an inference of negligence is drawn from the conduct as a matter of law but the inference may be rebutted.[32] In *Dewing,* no negligence per se is involved but the court apparently viewed the inference of negligence in that case as being a strong one arising from the facts of the case. Thus a distinction between the two lines of cases is that the defendant's line of cases does not involve negligence

[31] In *Baars,* for example, in which the defendant's automobile ran into a ditch, the plaintiff argued that an inference of negligence arose based on the driver's violation of a safety statute requiring drivers to remain on their side of the road. The court rejected the plaintiff's argument that an automatic inference of negligence arose when the defendant had simply driven off the traveled portion of the road. *Baars,* 249 Wis. at 67, 70. *See also Wood,* 273 Wis. at 102; *Klein v. Beeten,* 169 Wis. 385, 388, 172 N.W. 736 (1919).

[32] *See Totsky v. Riteway Bus Serv., Inc.,* 2000 WI 29, ¶ 28 & n.6, 233 Wis. 2d 371, 607 N.W.2d 637.

per se. The courts in the defendants' line of cases (*Klein, Baars,* and *Wood*) were not willing to view an automobile veering to the right and going off the road as involving a violation of a safety statute or of a rule of the road that would allow an inference of negligence to be drawn.

¶ 71. This distinction between an inference of negligence arising from the doctrine of res ipsa loquitur and an inference of negligence arising from the doctrine of negligence per se is not totally persuasive, because, as this court recently noted, early Wisconsin case law does not draw a clear distinction between an inference of negligence arising from the circumstances of a case and an inference of negligence arising from the doctrine of negligence per se.[33]

¶ 72. Another related way to distinguish these two lines of cases is on the basis of the strength of the inference of negligence that arises under the circumstances of the collision, that is, that the likelihood of the alleged tortfeasor's negligence is substantial enough to permit the complainant's reliance on res ipsa loquitur even if evidence is offered to negate the inference.[34] Inferences are of varying strength, and the

---

[33] *See Totsky,* 2000 WI 29 at ¶ 28 n.6.

[34] *See* Reporter's Note, cmt. d, Discussion Draft (April 5, 1999), Restatement (Third) of Torts:

> Everything depends on how strong the inference is of likely defendant negligence before evidence is introduced that diminishes the likelihood of any alternative causes. . . .If the evidence begins by showing that a car swerved off the highway, the motorist can be the target of res ipsa loquitur. If the evidence more specifically shows, however, that the car swerved because of a sudden deflation of a tire, that evidence largely leaves the motorist off the res ipsa loquitur hook. . . .At the same time, if the car is only one week old and has been driven properly, the evidence suggests the likely negligence of the car manufacturer. . . . If, by contrast, the car's tires are

evidence necessary to negate an inference of negligence depends on the strength of the inference of negligence under the circumstantial evidence available in each case.[35]

¶ 73. If there is a weak inference of negligence arising from the automobile incident, such as when an automobile veers off the traveled portion of a road without striking another vehicle, evidence of a non-actionable cause may negate that weak inference altogether so that there is no reasonable basis on which a fact-finder could find negligence. Any finding of negligence would have to rest on speculation and conjecture in such circumstances.[36]

¶ 74. Under other circumstances, such as when a driver veers into other lanes of traffic or strikes stationary vehicles, the inference of negligence may be strong enough to survive alongside evidence of other, non-actionable causes. The circuit court determines whether to give the jury a res ipsa loquitur instruction, but the fact-finder determines whether to draw the inferences.

---

two years old, but if the evidence shows that six hours before the accident the tires had been rotated by an auto service station, that evidence supports a res ipsa loquitur claim against the station.

[35] *Weggeman*, 5 Wis. 2d at 510. *See also* Keeton, *Prosser and Keeton on the Law of Torts* § 40 at 261 (noting that "[i]t takes more of an explanation to justify a falling elephant than a falling brick, more to account for a hundred defective bottles than for one").

[36] This seems to be the point this court was drawing in *Wood*, in which it held that inconclusive evidence regarding a heart attack was not sufficient to rebut the inference of negligence arising from a vehicle's "unexplained departure from the traveled portion of the highway," although more conclusive evidence might have been sufficient. *Wood*, 273 Wis. at 102.

¶ 75. This distinction may allow us to explain why the *Dewing* court declined to follow the *Wood* court's conclusion that evidence of a heart attack that occurred before, during, or after a collision would have been sufficient to negate the inference of negligence arising from a vehicle's unexplained departure from the traveled portion of the highway. In *Wood*, the inference of negligence was weak, yet the inference of negligence was sufficient to support the complainant's action, when no evidence of a heart attack was produced. *See Wood*, 273 Wis. at 102.[37]

¶ 76. In this case, evidence that the defendant-driver driving an automobile west toward the sun struck three automobiles on a straight, dry road under good weather conditions at 4:30 on a February afternoon (with sunset three-quarters of an hour later) raises a strong inference of negligence. Thus in the present case the inference of negligence arising from the doctrine of res ipsa loquitur survives alongside evidence that the defendant-driver suffered a heart attack sometime before, during, or after the collision. The jury will weigh the evidence at trial and accept or reject this inference.

¶ 77. Our approach finds support in the treatises and the Restatement (Second) of Torts, upon which we have relied in our res ipsa loquitur cases.[38] According

---

[37] *See* Reporter's Note, cmt. d, Discussion Draft (April 5, 1999), Restatement (Third) of Torts (similarly explaining the res ipsa loquitur case law).

[38] Restatement (Second) of Torts § 328D (1965), provides as follows:

§ 328D. RES IPSA LOQUITUR

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

to the Restatement, a complainant may benefit from the res ipsa loquitur doctrine even where the complainant cannot exclude all other explanations. A complainant "need not, however, conclusively exclude all other possible explanations" to benefit from an inference of negligence.[39] When a defendant offers evidence that an event was not caused by his negligence, the inference of the defendant's negligence is not necessarily overthrown. The fact-finder at trial and the court on summary judgment are still permitted to infer from the facts that the defendant was negligent. "It is enough that the facts proved reasonably permit the

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Subsection (b), which implicates the central issue in this case, has been criticized as "ambivalent." The Reporter's Notes, Restatement (Third) of Torts § 15, cmt. d, Discussion Draft (4/5/99) explains:

The extent to which the plaintiff is required to offer evidence ruling out alternative explanations for the accident is an issue to which the Restatement Second of Torts provides an ambivalent response. In black letter it states that res ipsa loquitur does not apply unless "other responsible causes" for the accident "are sufficiently eliminated by the evidence.". . .Yet in an Illustration that immediately follows, res ipsa is deemed appropriate without any evidence being offered that eliminates (or even reduces the likelihood of) other responsible causes. . . .The tension between the Restatement black letter and the Restatement Illustrations are worked out in this Comment. Everything depends on how strong the inference is of likely defendant negligence before evidence is introduced that diminishes the likelihood of any alternative causes.

[39] Restatement (Second) of Torts § 328D, cmt. e (1965).

conclusion that negligence is the more probable explanation."[40] This court stated in *Weggeman v. Seven-Up Bottling Co.*, 5 Wis. 2d 503, 514, 93 N.W.2d 467 (1958), that "the evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it."

¶ 78. If a defendant seeks summary judgment, he or she must produce evidence that will destroy any reasonable inference of negligence or so completely contradict it that reasonable persons could no longer

[40] Restatement (Second) of Torts § 328D, cmts. e and f (1965).

The Restatement (cmt. e) further indicates that where "the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof." No guidance is provided as to how a court should evaluate whether the probabilities are, at best, evenly divided such that the issue of negligence may not go to a jury.

Other authorities have resisted the notion that a court's perspective of an even division in the inferences should be a basis for removing the question from the jury. *See, e.g.*, William L. Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 267 (1936) ("[t]he question is largely academic, since few if any cases are ever evenly balanced"); 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2528 at 293 (1995) (noting that federal courts no longer follow the rule that courts should remove "equally probable inferences" from the jury and stating that "[t]his undoubtedly reflects the fact that the courts recognize that they lack the ability to say whether two or more reasonable inferences are equal"); Daniel P. Collins, Note, *Summary Judgment and Circumstantial Evidence*, 40 Stan. L. Rev. 491, 504 (1988) (most lower courts that have addressed the issue have held that the equal inferences rule is no longer valid).

accept it.[41] When a defendant moving for summary judgment offers exculpatory evidence so strong that reasonable minds can no longer draw an inference of negligence, a judgment for the defendant as a matter of law would be appropriate.

¶ 79. At the summary judgment stage, we must view the heart attack evidence in the light most favorable to the plaintiff. The plaintiff has offered the deposition of an expert, who stated that there is no basis for determining whether the heart attack occurred before, during, or after the collision. Thus, viewed in the light most favorable to the plaintiff, the heart attack evidence at this stage does not conclusively exonerate the defendants of negligence. From the opinions of the expert medical witnesses, the most that can be said is that it is equally plausible that the heart attack occurred before, during, or after the incident.

¶ 80. The defendants argue that because the heart attack could have happened either before, during, or after the collision, reasonable minds could no longer draw an inference of the defendant-driver's negligence and that any inference of negligence is conjecture and speculation. We disagree with the defendants.[42]

---

, [41] Restatement (Second) of Torts § 328D, cmt. o (1965) ("If the defendant produces evidence which is so conclusive as to leave no doubt that the event was caused by some outside agency for which he was not responsible, or that it was of a kind which commonly occurs without reasonable care, he may be entitled to a directed verdict."). *See* Keeton, *Prosser and Keeton on the Law of Torts* § 40 at 261; Fowler V. Harper & Fleming James, Jr., *The Law of Torts* § 19.12 at 1104–05 (1956).

[42] The pattern jury instruction on the burden of proof admonishes the jury that "if you have to guess what the answer

840

¶ 81. The defendants' arguments regarding jury speculation seem to us to be overstated. The U.S. Supreme Court has noted that all jury determinations require some level of conjecture or speculation and that cases should be taken away from the jury only when there is a complete absence of probative facts. Where there is an evidentiary basis for the complainant's claim, a fact-finder is free to discard or disbelieve inconsistent facts. *See Lavender v. Kurn*, 327 U.S. 645, 652 (1946). If the evidence might reasonably lead to either of two inferences it is for the jury to choose between them. In this sense, circumstantial evidence is like testimonial evidence. The fact-finder uses its experience with people and events in weighing the probabilities.[43]

■

¶ 82. Wisconsin case law has likewise acknowledged that juries may engage in some level of speculation. *See Weber v. Chicago & Northwestern Transp. Co.*, 191 Wis. 2d 626, 636, 530 N.W.2d 25 (Ct. App. 1995) (quoting *Lavender*, 327 U.S. at 653).

¶ 83. Numerous reasonable inferences, albeit conflicting ones, can be drawn from the record, considering the opinions of the medical experts and the

should be after discussing all evidence which relates to a particular question, the party having the burden of proof as to that question has not met the required burden." Wis JI—Civil 200.

The defendants also contend that the fact that the defendant-driver had between five and twenty seconds to react to sensations of dizziness does not create a jury question. The defendants rely on their medical expert, who doubted whether the defendant-driver had sufficient time and control to pull off the road prior to the first impact. A fact-finder, of course, need not accept this opinion.

[43] *Holland v. United States*, 348 U.S. 121, 140 (1954).

circumstances of the collisions. The record in this case at the motion for summary judgment affords a rational basis for concluding that the defendant-driver was negligent. The inference of negligence that arises under the facts of this case is sufficiently strong to survive the defendants' inconclusive evidence of a non-negligent cause.

¶ 84. The trier of fact should be afforded the opportunity to evaluate conflicting testimony. Seeing and hearing the witnesses can assist the trier of fact in determining whether a reasonable probability exists that the defendant-driver was negligent. As we stated in *Peplinski*, 193 Wis. 2d at 18: "The impression of a witness's testimony which the trial court gains from seeing and hearing the witness can make a difference in a decision that evidence is more than conjecture, but less than full and complete."

¶ 85. When the parties are entitled to competing inferences of negligence and non-negligence, courts should not rely on inconclusive evidence to dispose of one of the inferences at the summary judgment stage. Summary judgment is inappropriate.[44] When a defendant can offer only inconclusive evidence of a non-negligent cause, a court should not attempt to weigh the probabilities of negligence created by the competing inferences; that is the function of the jury.[45] Only when the inference of negligence is so weak in the first

[44] *Moore's Federal Practice* ¶ 56.11[8]; 10A Charles A. Wright, Arthur L. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2713.1 at 243 (1998).

[45] The *Wood* court also emphasized that the jury, not the judge, weighs the contradictory evidence and inferences, assesses the credibility of witnesses, and draws the ultimate facts. The *Wood* court, 273 Wis. at 101 (quoting *Tennant v. Peoria and P.U.R. Co.*, 321 U.S. 29, 35 (1944)), stated:

place can it be sufficiently negated by a competing inference of non-negligence, such that a jury could no longer reasonably conclude that the defendant was negligent. In this limited category of cases, a court would be justified in granting summary judgment for the defendants.

¶ 86. For these reasons, we hold that the evidence of the defendant-driver's heart attack does not by itself foreclose the plaintiff from proceeding to trial in the present case. Quite simply, there exists a material issue of fact regarding whether the defendant-driver negligently operated his automobile. Since the record, when viewed in a light most favorable to the plaintiff, supports a reasonable inference of negligence, we hold that summary judgment must be denied.

¶ 87. Although we conclude that the plaintiff has established a prima facie case of negligence sufficient to survive a motion for summary judgment, we note that the evidence that the defendant-driver suffered a heart attack gives the defendants two possible ways to prevail at trial. First, the jury may find that the evidence regarding the timing of the heart attack is inconclusive but may nonetheless decline to draw the permissible inference of the defendant-driver's negligence arising from the facts of the collision itself. Second, the jury may conclude, based on its evaluation

It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. . . . [The jury] weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

of the evidence, that the defendants carried their burden of persuasion on the affirmative defense of "illness without forewarning."[46]

¶ 88. There are essentially three elements of "illness without forewarning": (1) the defendant had no prior warning of the illness; (2) the defendant was subjected to an illness; and (3) the illness affected the defendant's ability to control the vehicle in an ordinarily prudent manner.[47]

¶ 89. With the burden of persuasion of the affirmative defense on the defendants, the defendants must show that no genuine issue of material fact exists as to the elements of the defense in order to be granted summary judgment. The defendants have failed to establish that the heart attack preceded the collision. Thus this affirmative defense is not a sufficient basis to grant summary judgment for the defendant. We cannot

---

[46] The defendants have raised the issue of a heart attack as an affirmative defense in their answer, as required by Wis. Stat. § 802.02(3) (1997–98). The defendants have the burden of persuasion on this affirmative defense. *See* Brief of Defendants-Respondents Brief at 24–25. *See also* comment to Wis JI—Civil 1021.2.

[47] Wisconsin Civil Jury Instruction 1021.2 states in part as follows:

The law of Wisconsin is that where a driver, through sudden illness or loss of consciousness, commits an act or omits a precaution which would otherwise constitute negligence, such act or omission is not negligence if the occurrence of such illness or loss of consciousness was not preceded by sufficient warning that a person of ordinary intelligence and prudence ought reasonably to foresee that he or she, by driving a car would, subject the person or property of another or of himself or herself to an unreasonable risk of injury or damage.

hold as a matter of law that the defendant-driver has conclusively defended against the claim of negligence.

¶ 90. For the reasons set forth, we reverse the order of the circuit court granting summary judgment to the defendant-driver. We remand the cause to the circuit court for further proceedings not inconsistent with this decision.

*By the Court.*—The order of the circuit court is reversed and the cause remanded to the circuit court.

¶ 91. N. PATRICK CROOKS, J. *(dissenting)*. The court of appeals certified this case, asking for our guidance in navigating the sea of seemingly contradictory applications of *res ipsa loquitur*. However, instead of providing guidance for the bench and bar, the majority has further obfuscated the application of *res ipsa loquitur*. In so doing, the majority has effectively overruled precedent established over the course of a century and not only undermined the *res ipsa loquitur* doctrine, but also summary judgment methodology.

¶ 92. The court of appeals certified the following issue:

> What is the proper methodology for determining if a res ipsa loquitur inference of negligence is rebutted as a matter of law at summary judgment? More specifically, *under the facts of this case,* is a res ipsa loquitur inference of negligence rebutted as a matter of law at summary judgment by evidence that the alleged tortfeasor suffered a heart *attack when the evidence is in conflict, or uncertain, as to whether the heart attack occurred before or after the accident*?

(Emphasis added.)

¶ 93. *Res ipsa loquitur* is applicable only where:

(a) either a lay[person] is able to determine as a matter of common knowledge or an expert testifies that the result which occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

*Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 17, 531 N.W.2d 597 (1995) (citing *Lecander v. Billmeyer*, 171 Wis. 2d 593, 601–02, 492 N.W.2d 167 (1992)). The majority claims that *res ipsa loquitur* is applicable where only two of these requirements are met: (1) the result does not ordinarily occur in the absence of negligence and (2) the agency of or instrumentality of the harm was within the exclusive control of the defendant. Majority op. at ¶ 34.

¶ 94. However, *res ipsa loquitur* is not applicable unless the third requirement relating to causation is also met. The majority quotes what has been the rule in this state since 1898:

Where there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it might be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that the foundation for a verdict.

Majority op. at ¶ 40 n.24 (quoting *Hyer v. Janesville*, 101 Wis. 371, 377, 77 N.W. 729 (1898)). The majority reiterates, in a number of variations, that *res ipsa loquitur* is not applicable where the jury would have to resort to speculation to determine the cause of an acci-

dent. *See, e.g.*, majority op. at ¶ 40. The majority also discusses a number of cases where this rule has been applied, namely, *Klein v. Beeten*, 169 Wis. 385, 172 N.W. 736 (1919), *Baars v. Benda*, 249 Wis. 65, 23 N.W. 477 (1945). Yet, the majority does not apply that rule, which has been the law in Wisconsin for more than 100 years, nor explain how it resolved the threshold issue of whether *res ipsa loquitur* is even applicable in this case. Instead, the majority certainly seems to adopt a new rule that, although it may be the rule elsewhere, has never been adopted in Wisconsin, namely, that equally competing reasonable inferences of negligence and non-negligence should be submitted to the jury. *See* majority op. at ¶ 77. Such a rule inevitably requires the jury to speculate.

¶ 95. *Res ipsa loquitur* is not applicable here because there is no evidence that removes causation from the realm of conjecture. Based upon the police report,[1] the majority concludes that a reasonable inference to be drawn from the defendant-driver's striking

---

[1] Indeed, the evidence the majority relies upon—the police report, even though submitted by defendants—includes hearsay and probably would not be admissible at trial. Although the police officer's personal observations and measurements would be admissible (*Wilder v. Classified Risk Ins. Co.*, 47 Wis. 2d 286, 290, 177 N.W.2d 109 (1970)), the witnesses' statements contained in the police report, upon which the majority relies (majority op. at ¶¶ 10, 11, 29, 30), would not be admissible. *Mitchell v. State*, 84 Wis. 2d 325, 330, 267 N.W.2d 349 (1978). Even summary judgment must be based upon admissible evidence.

The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .Supporting and opposing affidavits

three automobiles is that he was negligent in operating his automobile. Majority op. at ¶¶ 30, 32. But another, just as reasonable, if not more so, inference, to be drawn from the evidence is that the defendant-driver's heart attack caused the accident. There is no evidence that one inference or explanation is more reasonable or more likely than the other.[2] If causation is speculative, the plaintiff is not entitled to rely upon *res ipsa loquitur*, i.e., where "there is no credible evidence upon which the trier of fact can base a reasoned choice between the two possible inferences, any finding of causation would be in the realm of speculation and conjecture." *Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652 (1978).

¶ 96. The majority tries to avoid its Achilles heel by ignoring the requirement for the application of *res ipsa loquitur* that the plaintiff must proffer sufficient evidence to show causation beyond conjecture. After the majority decision, summary judgment will be proper in cases that *may* involve *res ipsa loquitur*. The majority finds summary judgment appropriate *only* where the defendant destroys the inference of negligence or so completely contradicts that inference that a fact-finder cannot reasonably accept it. Majority op. at

---

shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence.

Wis. Stat. § 802.08(2), (3) (1997–98).

[2] The majority also indicates that discussion of reasonable inferences leads to a discussion of *res ipsa loquitur*. Majority op. at ¶ 33. Not every reasonable inference of negligence should suggest that a case involves *res ipsa loquitur*. If such were true, then, despite the majority's protestations to the contrary (*id.* at ¶ 35), every automobile collision would indeed raise the issue of *res ipsa loquitur*.

¶ 78. To do this, defendants must come forward with evidence that "conclusively exonerate[s] the defendants of negligence." *Id.* at ¶ 79.

¶ 97. Apparently, according to the majority, the defendant must disprove any possibility of negligence, regardless of whether the plaintiff has affirmatively shown negligence beyond conjecture. As a consequence, in those cases where either an actionable or nonactionable cause resulted in an accident, now the plaintiff would be allowed to proceed under *res ipsa loquitur*, unless the defendant conclusively, irrefutably, and decisively proves that there was no negligence.

¶ 98. By eliminating the requirement that the plaintiff must show that the cause of the accident has been removed from the realm of speculation or conjecture, the majority has turned over 100 years of precedent on its head. *See Hyer*, 101 Wis. at 377. This court first found *res ipsa loquitur* applicable in an automobile collision case only because the inferences of nonnegligent causes had been eliminated, rendering *Hyer* inapposite. *Wisconsin Tel. Co. v. Matson*, 256 Wis. 304, 312–13, 41 N.W.2d 268 (1950). In *Matson*, this court reiterated *Hyer*'s holding, and noted that while *res ipsa loquitur* acted as a substitute for proof of negligence, "it is only where the circumstances leave no room for a different presumption that the maxim applies." *Id.* at 310 (citing *Klein*, 169 Wis. 385). In other words, only where the circumstances eliminated contrary inferences "until only those of negligent operation remain," will *res ipsa loquitur* apply in car accident cases. *Matson*, 256 Wis. at 312–13. The defendants had raised only "imaginary traffic conditions," but offered no evidence as to a nonactionable cause for the accident at issue. *Id.* at 312. Consequently, "[n]othing is left which can rationally explain the collision except negli-

gence on the part of the driver. There are no circumstances which leave room for a different presumption." *Id.* Accordingly, *res ipsa loquitur* was appropriate, and applicable. The majority today creates a test that requires just the opposite; namely, that the doctrine of *res ipsa loquitur* is applicable until the inference of negligence is eliminated or destroyed.

¶ 99. The majority has all but overruled *Wood v. Indemnity Ins. Co. of N. Am.*, 273 Wis. 93, 76 N.W.2d 610 (1956). As the majority notes (¶ 44), in *Wood,* had there been "conclusive testimony" that the driver, James Wood, had a heart attack at the time of the accident, there would have been no need for the defendant to "establish that the heart attack occurred before" the accident "to render inapplicable the rule of *res ipsa loquitur.*" *Id.* at 101–02. But there was no such conclusive testimony; instead, the wife of the driver, Neomi Wood, had testified that just as their jeep hit the gravel at the side of the road, she saw "Mr. Wood as stiffening out, doing something with his feet." *Id.* at 98. Also, a witness who saw James Wood's body after the accident—he had been killed by the accident—described his face as "grayish blue." *Id.* This is hardly irrefutable, conclusive testimony that James Wood had a heart attack at the time of the accident. Indeed, the majority notes that "the defendant produced no admissible evidence of a heart attack." Majority op. at ¶ 44 n.26. Yet, in *Wood,* this court did not require that the evidence of a heart attack irrefutably establish that the heart attack occurred *before* the accident. *Id.* at 101–02. Instead, this court held that if there was evidence of a non-negligent cause of the accident, the jury would have to speculate between

negligence and non-negligence, rendering *res ipsa loquitur* inapplicable.[3]

¶ 100. Here, there is conclusive, irrefutable evidence that the defendant-driver had a heart attack at the time of the accident. All of the experts agree. They do not agree whether the heart attack occurred before or during the accident, but, according to *Wood*, the defendants need not establish that the heart attack occurred prior to the accident. But that significant aspect of *res ipsa loquitur* has been obliterated by the majority. Not only has *Wood* been effectively overturned, but so have all the other cases that withheld application of *res ipsa loquitur* where the circumstances indicated that the accident just as likely resulted from a non-negligent cause as a negligent cause.

¶ 101. The majority recognizes these cases that held that *res ipsa loquitur* is not applicable where "it is shown that the accident might have happened as the result of one of two causes," and that one cause is not negligence. Majority op. at ¶ 40 (citing *Klein*, 169 Wis. at 389). But the majority attempts to re-explain them, not as having competing inferences of negligence and non-negligence, but as having "weak" inferences of negligence. Majority op. at ¶¶ 72–73. This approach is particularly untenable because it requires comparing the inferences of negligence and non-negligence. According to the majority, in order for the circuit court to determine whether summary judgment is appropriate or not, the court must evaluate whether an inference is "strong" or "weak." Majority op. at ¶¶ 72,

---

[3] *Wood* referred to this axiom as "the rule laid down in *Baars v. Benda*, 249 Wis. 65, 23 N.W.2d 477 (1946)." 273 Wis. at 101. The rule was not applicable in *Wood* because there was no evidence of a non-negligent cause.

73, 74, 83, 85. This flies in the face of summary judgment methodology, which is to decide a case as a matter of law without weighing and comparing the evidence. Also, such an approach "is unwise because it puts the court into the position of weighing the evidence and choosing between competing reasonable inferences, a task heretofore prohibited on summary judgment." *Yahnke v. Carson*, 2000 WI 74, ¶ 27, 236 Wis. 2d 257, 613 N.W.2d 102; *see also* Wis. Stat. § 802.08 (1997–98). Indeed, the ease with which the majority gives its imprimatur to the weighing of evidence in deciding a summary judgment motion is very troublesome.

¶ 102. Nowhere has this court previously even hinted that a defendant needs to produce conclusive, irrefutable, and decisive evidence to "destroy" any inference of negligence or face a trial. Rather, the test to date has been that the inferences on non-negligent causes had to be eliminated for *res ipsa loquitur* to apply. The majority's approach thus flies in the face of our precedent since *Hyer*, more than 100 years ago. It also flies in the face of summary judgment methodology, and places an unacceptable burden here upon the defendants to disprove plaintiffs' claim. For these reasons, I respectfully dissent.

¶ 103. I am authorized to state that Justice JON P. WILCOX and Justice DIANE S. SYKES join in this dissent.