Joseph J. KAFKA, Plaintiff-Appellant,

v.

James W. POPE and Roseanne Pope, Defendants-
Respondents-Petitioners,

M & I NORTHERN BANK, First Financial Bank, F.S.B.
and Chase Manhattan Leasing Corp., Defendants-
Respondents.

Supreme Court

*No. 94–0098. Oral argument May 25, 1995.—Decided June 26,
1995.*

(Also reported in 533 N.W.2d 491.)

For the defendants-respondents-petitioners there were briefs by *Timothy V. Langer* and *Haight, Fabyan & Langer, S.C.,* Hartland and oral argument by *Timothy V. Langer.*

For the plaintiff-appellant there was a brief by *Gerald J. Mayhew* and *Trebon & Mayhew,* Milwaukee and oral argument by *Gerald J. Mayhew.*

WILCOX, J. This case involves review of a published decision of the court of appeals, *Kafka v. Pope,* 186 Wis. 2d 472, 521 N.W.2d 174 (Ct. App. 1994), reversing an order of the circuit court for Waukesha County, Robert G. Mawdsley, Circuit Judge. Joseph J. Kafka brought suit against James W. Pope, et al. (Pope) demanding contribution and/or subrogation rights for monies paid by Kafka in satisfying a corporate debt. The circuit court granted Pope's summary judgment request to dismiss the complaint against him. The court of appeals reversed, holding that a guarantor may be entitled to contribution from another guarantor, even though their guaranties are evidenced by separate instruments, so long as the underlying debt for which they are liable is the same. *Id.* at 473, 521 N.W.2d at 175.

The question we consider on review is whether an action for contribution is available to a co-guarantor when that person has paid more than his fair share of a common obligation, even though the guaranties are

evidenced by separate instruments. We conclude that such an action may be maintained. We further conclude that a material issue of fact exists as to whether Kafka paid an unfair share of a common obligation and, as such, affirm the decision of court of appeals and remand the case for further proceedings.[1]

The relevant facts necessary for a resolution of the issue before us are not in dispute. Petitioner Kafka was a majority shareholder and officer of Wisconsin Truck Center, Inc. (WTC), a corporation involved in trucking concerns. Respondent Pope was a minority shareholder and officer of WTC. On May 14, 1986, WTC executed three promissory notes payable to M & I Northern Bank (M & I) totalling $650,000.00. Both Kafka and Pope executed separate personal guaranties for the notes. The personal guaranties were secured by mortgages on real property owned by each person.[2]

The notes subsequently were extended, modified, and renewed. In the meantime, WTC began experiencing cash flow problems and was unable to meet its payments on the three promissory notes. As expected, M & I took action to recover the money loaned to WTC. In separate actions, M & I foreclosed on two mortgages given by Kafka, and the proceeds from those properties were applied to the principal owed by WTC. At the time the complaint was filed herein, Kafka had paid

---

[1] Because we resolve the case on the basis of our discussion concerning contribution, it is unnecessary to consider Kafka's alternate theory that he is entitled to subrogation.

[2] The Pope mortgage was held by M & I Northern Bank. The Pope mortgage secured $100,000.00 of the WTC debt. Although it is not in the record, nor necessary to our holding in the present case, we presume that the Kafka mortgages secured the balance of the WTC debt.

$200,000.00 of his personal funds toward the amounts due on the notes, and Pope had paid nothing.[3]

On March 17, 1993, Kafka filed a complaint against Pope asserting, among other things: (1) "[b]y virtue of the Guaranties executed, Kafka and Pope are each obligated to pay one-half of the total amount of debt which was not paid by WTC on the Notes. Kafka had paid more than one-half and, accordingly, is entitled to judgment for contribution from Pope;" and (2) "according to the law of restitution and equity, Kafka, having paid more than his fair share of the amount due on the Notes, is subrogated to M & I's mortgage lien rights against the Property under the Pope Mortgage to the extent of said excess payments." Pope responded that Kafka's claims of contribution and/or subrogation were meritless and, in any event, because of Pope's bankruptcy "any obligation to [Kafka] has been discharged."[4]

---

[3] M & I did commence a foreclosure action on or about August 29, 1990, against Pope seeking to compel payment of the remaining balance of approximately $19,295.00 due on the notes. That amount included accrued interest, attorneys fees, and costs incurred in collection of WTC accounts receivable and in the Kafka foreclosure proceedings. We arrive at this dollar figure based on the findings of fact, conclusions of law, order for judgment, and judgment for foreclosure issued by Judge Patrick Snyder on February 1, 1993. We note that the circuit court, Judge Robert G. Mawdsley, and the briefs herein refer to the balance remaining as $18,600.00. A motion by Kafka to intervene in the foreclosure action was denied on March 3, 1993 as untimely. Pope subsequently has satisfied the mortgage and the judgment.

[4] Because the status of the Popes' bankruptcy proceeding has no bearing on our ultimate conclusion in this case, we do not address the question, unanswered in the record, as to when and how Kafka received notice of the Pope bankruptcy petition, and

Pope brought a summary judgment motion asking the circuit court to dismiss the lawsuit brought against him. On October 20, 1993, the circuit court issued a written decision granting Pope's summary judgment request. As to the contribution claim, the court concluded that Kafka and Pope "are parties to separate contracts/guaranties with M & I" and, therefore, "neither has a cause of action for contribution against the other on the grounds of paying more than his fair share." The court then concluded that Kafka's subrogation claim also must be dismissed because Pope was not "unjustly enriched" by Kafka's payments on the WTC notes since "[he] was merely paying off the debt he contracted to guarantee [sic]." Kafka appealed and the court of appeals, addressing only the contribution claim, reversed the circuit court. The appellate court, looking to "principles of equity and natural justice," concluded:

> Thus, it is apparent that while the trial court looked to contract principles to resolve the issue, contribution, at its root, is an equity principle. It is founded upon the relationship between persons paying a "just proportion," not upon express contract. The trial court treated the question as one of contract law; it more precisely should have been acting in equity.

the nature of Kafka's status in that proceeding. The Popes filed a petition for bankruptcy on October 21, 1991. An order for discharge of debtors was entered by the bankruptcy court in favor of the Popes on January 23, 1992. An affidavit of Kafka's attorney in this action disclosed that the Pope bankruptcy case was reopened on March 8, 1993. Nevertheless, Kafka's counsel acknowledged that by the time of oral argument in this matter the bankruptcy case was likely concluded.

239

*Kafka,* 186 Wis. 2d at 475–76, 521 N.W.2d at 176. Consequently, the court held that "[a]s a matter of equity, both should be equally liable." *Id.* at 476, 521 N.W.2d at 176. Pope petitioned for review which we accepted on November 16, 1994.

Procedurally, this case is before the court on a motion for summary judgment. This court reviews a grant or denial of summary judgment *de novo,* applying the standards set forth in sec. 802.08(2), STATS., in the same way as the circuit court applies them. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 531, 514 N.W. 2d 1, 4 (1994); *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). A motion for summary judgment is intended to discover whether there is any issue of fact which entitles the plaintiff to a determination thereof by a trial. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980); *Frederickson v. Kabat,* 260 Wis. 201, 204, 50 N.W.2d 381, 382 (1951). Where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment shall be granted in favor of the moving party. *Home Ins. Co. v. Phillips,* 175 Wis. 2d 104, 110, 499 N.W.2d 193, 176 (Ct. App. 1993). As noted in *Frederickson,* however, "[s]ummary judgment should be granted only when it is perfectly plain that there is no substantial issue to be tried." *Frederickson,* 260 Wis. at 204, 50 N.W.2d at 383. At this point in the proceedings, there is no dispute as to the relevant facts and, therefore, the case turns on a resolution of the question of law.

The underlying action in this case sounds in contract. As noted above, M & I brought an action against Kafka, based on the personal guaranty, seeking monetary reimbursement for the loans extended to WTC.

Pope argues that because "[t]he doctrine of contribution is an action in tort, . . . [it] is inapplicable to a contract action." Pope's argument, however, misconstrues the nature of the doctrine of contribution.

In *State Farm Mutual Automobile Ins. Co. v. Schara,* 56 Wis. 2d 262, 264, 201 N.W.2d 758, 759 (1972), this court noted that "a cause of action for contribution is separate and distinct from the underlying cause of action whether that underlying cause sounds in contract or in tort." The *Schara* court explained:

> The nature of the newly accrued cause of action is not dependent on whether the obligation discharged resulted from contract or tort. The cause of action that accrues depends not one whit upon the nature of the origin of liability. It is enough that joint liability from whatever source exist.
>
> . . ..
>
> All contribution claims have in common the characteristic that the party having a right against another also liable has discharged more than his share of the liability. It is the bearing of a greater share of a common liability than is justified, and not the source of the underlying liability, that characterizes a cause of action for contribution.

*Id.* at 266, 201 N.W.2d at 760. *See also Wait v. Pierce,* 191 Wis. 202, 226, 210 N.W. 822, 823 (1926) ("Whether the common obligation be imposed by contract or grows out of a tort, the thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability."); *Bushnell v. Bushnell,* 77 Wis. 435, 438, 46 N.W. 442, 443 (1890) (Contribution "is a legal action to recover money paid to the use of the defendant, and stands upon the same footing as any other action founded upon an implied contract.").

241

Accordingly, the case law makes clear that an action for contribution does not fall merely because the underlying action is one of contract. Rather, instead of looking to the nature of the underlying transaction, the question is simply whether one person jointly liable paid more than his fair share for a common obligation. Thus, despite Pope's assertions to the contrary, Kafka's action for contribution does not fail because the original action was based on a breach of contract.[5]

A right to contribution may be based on an express contract between the parties.[6] It may also arise by operation of law to rectify an inequity resulting when a co-obligor pays more than a fair share of a common obligation. In the latter instance, the contract is implied by law. *Schara,* 56 Wis. 2d at 267, 201 N.W.2d at 760–61. When no express agreement confers a right

---

[5] Because Kafka's claim against Pope for contribution is separate from the guaranty between himself and M & I, the contribution claim does not require the introduction of parol evidence. Kafka does not attempt to illustrate by extrinsic evidence that the unambiguous guaranty embodies an implied right. The right that Kafka asserts does not come from the guaranty with the bank, but from a contract implied by law.

Similarly, Kafka's claim for contribution is not barred by the statute of frauds. Kafka's claim does not rest on a special promise to answer for the debt of another—sec. 241.02(1)(b), Stats.; rather, it rests on the relationship between Kafka and Pope.

[6] Our conclusion in this case in no way infringes on the right of co-guarantors to contractually delineate the obligation of contribution between themselves in the event that it becomes an issue. Here, however, there was no express agreement by the parties regarding the issue of contribution for this court to consider.

of contribution, a party's right to seek contribution against another is premised on two conditions: (1) the parties must be liable for the same obligation; and (2) the party seeking contribution must have paid more than a fair share of the obligation. *See Wait,* 191 Wis. at 226, 210 N.W. at 823 (determining that what gives rise to the right of contribution is that one co-obligor has discharged more than his fair equitable share of a common debt) (quoted with approval in *Schara,* 56 Wis. 2d at 266, 201 N.W.2d at 760).

Here, there is no dispute that the guaranties signed by Kafka and Pope secured the same debt, *viz,* the entire indebtedness of WTC. Further, Pope concedes that Kafka personally has paid $200,000 of the debts of WTC in satisfaction of his guaranty obligations. Pope posits, however, that because the co-guarantors did not sign the same guaranty, and because there is no collateral document referencing contribution between the parties, Kafka has no right of contribution. Pope again confuses the underlying guaranty with the distinct cause of action for contribution. This court has explicitly stated that in determining a right of contribution, "it matters not, in a case of a debt, whether the sureties are jointly and severally bound, or only severally; or whether their suretyship arises under the same obligation or instrument, or under divers obligations or instruments, if all the instruments are for the identical debt." *Bushnell,* 77 Wis. at 436–37, 46 N.W. at 443 (quoting with approval 1 Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE § 495 at 508–09 (13th ed. 1886)). *Bushnell* has been the law in Wisconsin for more than 100 years and Pope

gives no sound reasons as to why we should overrule it now.[7]

To accept Pope's position would also be contrary to the logic and rationale underlying the development of the cause of action for contribution. The reason a court implies a contract for contribution is that both parties are liable for the same obligation and one has paid

[7] Courts in other jurisdictions have also concluded that a right to contribution does not depend on whether the sureties signed the same document or separate instruments. *See, e.g., Gardner v. Bean,* 677 P.2d 1116, 1119 (Utah 1984) (co-guarantors who signed separate guaranties are entitled to contribution when the guarantor has paid more than his share of the guaranteed debt); *Exchange Elevator Co. v. Marshall,* 22 N.W.2d 403, 410 (Neb. 1946) (quoting 2 John Norton Pomeroy, EQUITY JURISPRUDENCE §§ 405–412 (5th ed.) (adopting the rule that " '[w]here there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties . . . .' "); *Davis Sales v. Central Mfg Corp. of Michigan,* 398 S.E.2d 820, 822 (Ga. Ct. App. 1990) (recognizing contribution may exist when the co-sureties signed different instruments guaranteeing the same debt); *Dever v. Lee,* 373 S.E.2d 224, 227 (Ga. Ct. App. 1988) (stating that "the fact that appellant and appellee were not signatories to the same guaranty agreement but rather signed separate agreements . . . is not of consequence [to appellant's claim for contribution]"); *Kee v. Lofton,* 737 P.2d 55, 58 (Kans. Ct. App. 1987) (concluding that the right to contribution may arise regardless of the fact that the co-sureties signed different instruments guaranteeing the same obligation); *D'Alessandra v. Manufacturers Casualty Ins. Co.,* N.Y.S.2d 564, 568 (N.Y. Sup. Ct. 1951) (holding that the common liability that prompts a cause of action for contribution "may arise out of the same instrument or out of different instruments or at different times . . . .").

more than a fair share. That the sureties signed one or two or more pieces of paper securing the same obligation is irrelevant. As the texts on equity describing the cause of action for contribution clearly state, the same principles of contribution apply whether the sureties signed the same or different instruments. For instance, one commentator on the subject has noted:

> Initially the law courts refused to enforce contribution between co-sureties because it would be a "great cause of suits," but soon thereafter chancery gave such relief. Cases granting recovery in a law action appeared early in the nineteenth century, and the availability of a remedy at law soon became firmly established. As was true of indemnity, it was recognized both at law and in equity that contribution rested upon unjust enrichment. While a contract providing for contribution doubtless could be found in some instances, no attempt was made to do so. *In addition, in some cases ordering contribution a contract analysis was not available; for example, where two sureties signed at different times and neither was aware of the obligation of the other.* In addition to the suretyship situation, contribution is a common occurrence when there are coinsurers and one insurer pays more than his proportion of the loss, within the limits of the policy coverage, contribution is regularly allowed in proportion to the amounts of coverage under each policy.

George E. Palmer, THE LAW OF RESTITUTION § 1.5(d) at 31–32 (1978) (emphasis added; footnotes omitted).[8]

---

[8] *See also* John Norton Pomeroy, EQUITY JURISPRUDENCE § 1418 at 3362 (4th ed. 1919) ("Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his

■

In sum, we conclude that the circuit court improperly granted summary judgment in favor of Pope dismissing Kafka's action for contribution prior to a trial on the merits. Kafka is entitled to maintain such action and the ultimate material question of fact as to whether he paid more than his fair share of the common obligation must be resolved at trial.

*By the Court.*—The decision of the court of appeals is affirmed.

■

proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens."); George L. Clark, PRINCIPLES OF EQUITY § 452 at 608 (1937) ("In order to be entitled to contribution it is not necessary that the sureties should have signed the same instrument or should have known each other . . .."); Note, *Contribution in Suretyship,* 4 COLUM. L. REV. 432, 433 (1904) ("[I]t has been uniformly held that persons may be cosureties and liable to contribution although each assumed his obligation at a different time, by a different instrument, and without knowledge that there were other sureties . . ..").