Fred Wessel, Plaintiff-Respondent,
v.
Brian Schmidlin, Defendant-Appellant.
No. 03-2560.
Court of Appeals of Wisconsin.
Opinion Filed: June 30, 2004.
¶ 1 BROWN, J.[1]
Brian Schmidlin appeals from a judgment requiring him to reimburse Fred Wessel, his business partner, for his share of two direct payments on corporate loan principals that were personally guaranteed by Wessel and Schmidlin and for his share of attorney's fees incurred in the process of dissolving their company, Schmidlin Wessel Productions, Inc. We hold that under the equitable theory of contribution, Wessel is entitled to reimbursement for Schmidlin's share of the corporate loans and of the attorney's fees. We affirm.
¶ 2 The facts are brief. According to the parties, Wessel and Schmidlin were the sole and equal shareholders of a corporation, Schmidlin Wessel Productions, Inc. In August 2001, Schmidlin ceased his employment with the corporation. Schmidlin estimated that after he left the corporation, he put in approximately 100 billable hours and 100 additional hours for which he received no compensation. From the time Schmidlin left until March 2002, when the business operations apparently ceased, Wessel put in 1500 hours. He voluntarily took half salary through the rest of 2001 and full salary for the first two and a half months of 2002. During this time, Wessel made two direct payments of $648.14 and $6460.67 respectively from the corporate checking account on the principals of corporate loans from M&I Bank.[2] Wessel and Schmidlin were personal guarantors on those loans.
¶ 3 In February 2002, Wessel met with Robert Carroll, an attorney, to discuss the financial difficulties of Schmidlin Wessel Productions and the process of winding up the company. At the small claims court hearing held in September 2003, Carroll testified that while he considered Wessel his client, all of the charges Wessel incurred were directed at winding up the corporation. Carroll was paid $2057.26 in legal fees.
¶ 4 In 2003, Wessel sued Schmidlin in small claims court for reimbursement for his share of the two loan payments to M&I Bank, $3230.33 and $324.07 respectively, and the attorney's fees, $1028.63.[3] The trial court applied unjust enrichment and determined that Wessel was entitled to reimbursement for the loan payments and the attorney's fees. Schmidlin now appeals.
¶ 5 Courts have the power to apply an equitable remedy as necessary to meet the needs of a particular case, including in a corporate setting. See Prince v. Bryant, 87 Wis. 2d 662, 674, 275 N.W.2d 676 (1979); see also Mulder v. Mittelstadt, 120 Wis. 2d 103, 115-16, 352 N.W.2d 223 (Ct. App. 1984); Kafka v. Pope, 194 Wis. 2d 234, 236, 246, 533 N.W.2d 491 (1995).
[E]quity "has ... never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case." Equity has "power to enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances." If the customary forms of relief do not fit the case, or a form of relief more equitable to the parties than those ordinarily applied can be devised, no reason is perceived why it may not be granted.
Mulder, 120 Wis. 2d at 115-16 (citation omitted).
¶ 6 Here, the trial court cast its decision in terms of the equitable doctrine of unjust enrichment. The facts of this case, however, are more closely aligned with what is known in the law as equitable contribution. At the hearing the trial court asked Wessel, "So what you're really doing is seeking contribution for payments that you made?" and Wessel responded in the affirmative. Further, the record demonstrates that both Wessel and Schmidlin were each personally responsible for one-half of the total of the M&I Bank loans and the attorney's fees and that by working for half salary so that the corporation would have the funds to pay off the debts, Wessel personally discharged more than his fair share of the debts. In the spirit of the above-quoted equitable principles, we hold that on the basis of an equitable right to contribution, Wessel is entitled to be reimbursed for Schmidlin's half of the principal paid on the loan debts and to the attorney's fees incurred on behalf of the corporation. Thus, although the trial court's decision spoke in terms of unjust enrichment, we choose to affirm on different grounds. See Vanstone v. Town of Delafield, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995) (noting that an appellate court may affirm on different grounds than those relied on by the trial court).
¶ 7 The right to contribution is founded on the equitable principle that one should not pay more than his or her fair share of a common liability. See, e.g, Wagner v. Daye, 68 Wis. 2d 123, 125, 227 N.W.2d 688 (1975). The primary requisites of the equitable right to contribution and the obligation to contribute, and of the corresponding right and obligation at law, are (1) the parties must be liable for the same obligation; and (2) the party seeking contribution must have paid more than a fair share of the obligation. See 18 Am Jur 2d Contribution § 9 (1985). See also Kafka, 194 Wis. 2d at 242; Wait v. Pierce, 191 Wis. 202, 226, 210 N.W. 822 (1926).
¶ 8 In Kafka, our supreme court addressed the applicability of the right of contribution in the corporate context. Kafka, 194 Wis. 2d at 236-37, 246. Kafka, a majority shareholder and officer of Wisconsin Truck Center, Inc., (WTC) brought suit against Pope, a minority shareholder and officer of WTC, demanding contribution for monies paid by Kafka in satisfying a corporate debt. Id. at 237. WTC had executed promissory notes payable to M&I Northern Bank and both Kafka and Pope executed separate personal guaranties for the notes. Id. Subsequently, the bank took action against Kafka to recover the money loaned to WTC. Id. at 238. At the time Kafka filed his complaint, he had paid hundreds of thousands of dollars of his own personal funds toward the amounts due on the notes and Pope had paid nothing. Id. at 238-39. On appeal, Pope argued, in part, that Kafka had no right to contribution because he and Kafka did not sign the same guaranty. Id. at 243.
¶ 9 Our supreme court held that a shareholder of a corporation is entitled to maintain a cause of action for contribution against another shareholder where both parties have personally secured the corporate loans, even if evidenced by separate instruments, and the petitioning shareholder has put forth personal funds to pay off the corporation's debts. Id. at 236-37, 246. The court, however, remanded the case before it to the trial court to determine whether the facts demonstrated that Kafka, the petitioning shareholder, had paid more than his fair share of the corporate debts. Id. at 246.
¶ 10 We recognize that the shareholder in Kafka specifically used personal funds to pay off the corporate debt. We further anticipate that Schmidlin would argue that Kafka is inapposite because Wessel, unlike the shareholder in Kafka, paid the bank loans with corporate funds. That much is true. However, under the facts of this case, it is a distinction without a difference. While it is true that the bank loans, which represent corporate debts that the parties would have been personally responsible for had they not been paid, were technically paid out of corporate funds, the reality is that had Wessel not gone beyond the call of corporate duty and worked more hours for half salary, the corporation would not have been able to pay off the debt. This means the money representing the other half of Wessel's salary that would normally be his to keep and pay taxes on, was instead used to pay the loan. Thus, the money used to pay the M&I Bank loans is akin to the personal funds used by the shareholder in Kafka. Accordingly, pursuant to Kafka, as long as Wessel has paid more than his fair share of the bank loans, he is entitled to reimbursement for the monies paid.
¶ 11 The trial court's findings relating to its unjust enrichment determination demonstrate that Wessel has indeed paid more than his fair share of the debts. The facts show that the monies paid were directly attributable to Wessel. The corporation was able to pay the principal on the loans and the attorney's fees because Wessel generated income by putting in more than 200 hours per month on average, as compared to Schmidlin's 100 to 200 hours total, and then took half salary. Under these circumstances, we can only conclude that Wessel has paid more than his fair share of the bank loans, which were common liabilities, and is entitled to reimbursement from Schmidlin for his half of their common obligations.
¶ 12 Having established that Wessel is entitled to contribution for the bank loans, the next question we must address is whether work done to dissolve the corporation by Carroll, an attorney hired by Wessel, should be paid by both parties. For the same reasons that we conclude that Wessel is entitled to reimbursement for the bank loans, we also hold Schmidlin responsible for his half of the attorney's fees. While it is true that Wessel hired Carroll, it was in the interests of both Schmidlin and Wessel to wind up the corporation. At the time Wessel hired Carroll, the company was deeply in debt and still owed money on loans that were personally secured by both Schmidlin and Wessel. Thus, both parties benefited from Carroll's advice on how to wrap up the company's business and pay off the loans. Further, just as with the bank loans, it was, for all intents and purposes, Wessel's money that was used to pay off the attorney's fees. The corporation paid the attorney's fees because Wessel worked more hours for less pay. We, therefore, conclude that, under the theory of contribution, Wessel is entitled to reimbursement for Schmidlin's half of the attorney's fees.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The two payments to the bank were in the amounts of $1000 and $7000; $648.14 of the first payment and $6460.67 of the second payment represented a payment on the principal of the loan, the remaining amounts were scheduled payments. Wessel only seeks reimbursement for Schmidlin's share of the amount paid on the principal of the loan.
[3] Wessel also sought reimbursement for certain charges Schmidlin had made to the corporation's credit card. After hearing the evidence, the trial court rejected this claim. Wessel has not appealed that issue and we do not address it further.