*83 PATIENCE DRAKE ROGGENSACK, C.J.
¶ 82. (concurring in part, dissenting in part). I concur in the majority opinion's conclusion that Millers First breached its duty to defend by withdrawing its defense prior to exhausting its $100,000 limit of liability.[1]1 also concur in the majority opinion's conclusion that Me-nard's self-insured retention constitutes "other applicable liability insurance" under Millers First's "other insurance clause."9
¶ 83. However, I write in dissent because, contrary to the majority opinion, I conclude that Wisconsin has applied equitable contribution to other shared obligations and should apply it to defense costs between two primary insurers, Millers First and Menard. Millers First and Menard insured the same entity, Menard; they had the same primary obligation to defend Menard against Burgraff s claims; and Millers First contends that it paid more than its fair share of defense costs. Therefore, I conclude that the matter should be remanded to the circuit court to apply equitable contribution principles to determine how best to allocate the total defense costs incurred by Millers First and Menard. Accordingly, I respectfully concur in part and dissent in part from the majority opinion.
I. BACKGROUND
¶ 84. For the most part, the majority opinion sets forth facts that underlie the dispute before us. Therefore, I will not repeat them in full. However, I do relate a few additional, relevant facts.
¶ 85. Millers First provides automobile liability insurance to Kenneth Burgraff, who was injured when *84 a Menard employee attempted to load items purchased from Menard into Burgraffs vehicle. Burgraff brought suit against Menard for personal injuries. Millers First accepted Menard's tender of defense, subject to a reservation of rights, because in Blasing v. Zurich Am. Ins. Co., 2014 WI 73, ¶ 41, 356 Wis. 2d 63, 850 N.W.2d 138, we concluded that one who loads property into a vehicle is a "permissive user" of the vehicle and, accordingly, is entitled to a defense under the automobile liability policy for injuries alleged to have been caused by the loading.
¶ 86. Millers First hired attorney Edmund Manydeeds to defend both itself and Menard on the merits of Burgraffs claims. Millers First paid the entire cost of that defense until Millers First settled Burgraffs liability claim against it and was granted summary judgment dismissing it from the suit.[3]
¶ 87. Prior to withdrawing its defense, Millers First moved for pro rata apportionment of defense costs, asserting that Menard had a duty to defend itself under its self-insured retention. The circuit court denied the motion. The case proceeded to trial where Burgraff was awarded damages in excess of the amount that Millers First paid for its share of liability. Menard provided its own defense at trial.
¶ 88. Menard appealed the circuit court's summary judgment decision. The court of appeals affirmed the circuit court's conclusion that Menard's self-insurance constitutes "other applicable liability insurance," it reversed the decision regarding Millers First's duty to defend, and we granted review.
*85 ¶ 89. Subsequent to oral argument, we ordered the parties to brief the following issues: "(1) What types of damages can be claimed if Millers First is found to have breached its duty to defend?!;] (2) Are the damages available affected by the fact that Millers First defended until the circuit court approved Millers First's settlement with the plaintiff?"
¶ 90. Millers First responded as follows:
If this court were inclined to adopt the position, advanced by Menard, that it was entitled to a continued defense, notwithstanding that Millers First completely satisfied its complete covered claims duties, then the damages to be awarded should clearly reflect and take account of the concurrent coverage obligations of the respective parties. By virtue of the circuit court ruling, affirmed by the Court of Appeals, Millers First [owed] only one-sixth of the total damages. While the trial court did not specifically address the issue of proration of defense costs, the logical corollary to that finding is that Millers First would have owed only one-sixth of the total defense costs involving fees and costs as well. The most Menard could hope to recover, therefore, would be reimbursement of one-sixth of the total defense costs generated in this matter. Since Millers First paid for 100% of the total defense costs until it was allowed to withdraw, Millers First should be given credit for those costs which it bore up to that point.
(Millers First Supp. Br. 7 (emphasis omitted).)
¶ 91. Not surprisingly, Menard holds the opposite view, contending that pro rata apportionment of defense costs is not appropriate and that it is "entitled to all of its defense costs incurred in the defense of the underlying liability claim from the date Millers First withdrew its defense." (Menard Supp. Br. 3.) Menard cites Plastics Eng'g Co. v. Liberty Mut. Ins. Co., 2009 *86 WI 13, ¶ 60, 315 Wis. 2d 556, 759 Wis. 2d 613, for the proposition that Wisconsin law does not allow for pro rata allocation of defense costs. (Menard Supp. Br. 3-4.)
II. DISCUSSION
A. Majority Opinion
¶ 92. The majority opinion apparently agrees with Menard, stating that, "[h]ad Millers First put a pro-rated clause in its policy for defense costs as it did for its liability for loss, then defense costs could be pro-rated. However,. . . we decline now to rewrite its policy."[4] Without express contractual language, the majority opinion refuses to allow the circuit court, on remand, to consider apportioning defense costs between Millers First and Menard.[5] Instead, the majority opinion remands the matter to the circuit court to determine the amount of defense costs that Menard has incurred since Millers First's withdrawal and, apparently, intends Millers First to bear 100% of this burden, just as it did prior to the circuit court's grant of summary judgment that dismissed Millers First from Burgraffs lawsuit.[6]
f 93. As I explain below, this conclusion is inconsistent with the majority opinion's holding that Me-nard's self-insured retention constitutes "other applicable liability insurance," thereby rendering it a concurrent primary insurer with Millers First, with the same duty to defend Menard that Millers First *87 had.[7] The majority opinion explicitly recognizes Me-nard's duty to provide a defense against Burgraffs claims and states, "Menard is required to pay the first $500,000 worth of damages and defense costs arising from an occurrence."[8] Notwithstanding this acknowl-edgement, the majority opinion simultaneously overlooks Menard's duty to contribute to the costs of the defense that it was obligated to provide as a primary insurer.
B. General Equitable Principles
¶ 94. We have not directly addressed pro rata apportionment of defense costs between concurrent primary insurers. However, other jurisdictions have done so and have apportioned those fees based on equitable contribution principles. "Generally, where two or more insurers' policies potentially provide coverage and one of them bears the defense burden alone, the insurer bearing that burden is entitled to equitable contribution from the non-defending carriers." Lee R. Russ & Thomas F. Segalla, 14 Couch on Insurance § 200:35 (3d ed. 2007).[9] " [T]he aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the *88 others." Lee R. Russ & Thomas F. Segalla, 16 Couch on Insurance § 222:98 (3d ed. 2000).[10]
¶ 95. Although Millers First's contract does not direct that defense costs are to be shared with other primary insurers, apportioning defense costs through equitable contribution is appropriate. Id. (explaining that "equitable contribution applies only between insurers, and only in the absence of contract, and therefore it has no place between insurer and insured, which have contracted the one with the other"). This is because "all contractual duties or obligations flow only to the insured." Douglas R. Richmond, Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 Pepp. L. Rev. 1373, 1426 (1995). These duties and obligations do not flow "between or among the insurers." Id.
¶ 96. In the instant case, Millers First is a fortuitous insurer with respect to Menard. However, Me-nard also wears another hat. Menard is also an insurer with a duty to defend itself.[11] Millers First's obligations arising out of its policy language run to Menard as an insured rather than to Menard as an insurer. Millers First does not seek to allocate defense costs between itself and Menard as an insured but, rather, between itself and Menard as another insurer. Therefore, it is of no consequence that Millers First's policy language does not provide for pro rata apportionment of defense costs between itself and another primary insurer. Stated otherwise, the Millers First policy is a *89 contract between Millers First and those who are insureds, not a contract between Millers First and other primary insurers.
¶ 97. Apportioning costs between concurrent primary insurers, who insure the same person for the same risk, is the context in which courts apply equitable contribution principles out of fairness rather than out of contract. See, e.g., Cont'l W. Ins. Co. v. Colony Ins. Co., 69 F. Supp. 3d 1075, 1087 (D. Colo. 2014) (applying equitable contribution to require both primary insurers to bear defense costs); Cargill, Inc. v. Ace Am. Ins. Co., 784 N.W.2d 341, 353-54 (Minn. 2010) (concluding that primary insurer has a right to seek equitable contribution from other primary insurer for defense costs); Am. Simmental Ass'n v. Coregis Ins. Co., 282 F.3d 582, 589 (8th Cir. 2002) (apportioning total defense costs in same ratio as each insurer's policy provided for total liability); Md. Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082, 1089 (Cal. Ct. App. 2000) (explaining that equitable contribution of defense costs equalizes a common burden shared by primary insurers).
¶ 98. As mentioned above, it does not appear that Wisconsin courts have considered whether equitable contribution may be applied to apportion defense costs between concurrent primary insurers. The court of appeals refused to apply equitable contribution, at the request of a primary insurer, to apportion defense costs incurred by the excess insurer, who defended the amended complaint that the primary insurer repeatedly refused to defend. Se. Wis. Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc., 2007 WI App 185, ¶¶ 62-64, 304 Wis. 2d 637, 738 N.W.2d 87. The court of appeals noted that equitable contribution was inapplicable because the excess insurer sought *90 reimbursement for defense costs it incurred while shouldering a defense that rightly should have been met by the primary insurer. Id.
¶ 99. The majority opinion cites Southeast Wisconsin Professional Baseball, asserting that it precludes equitable contribution because Millers First did not provide a defense until its limit of liability was exhausted.[12] However, Menard also did not provide a complete defense, which the majority opinion recognizes that it was obligated to do.[13] The majority opinion gives no reason for treating two primary insurers so differently.
¶ 100. We previously have explained that "what gives rise to the right of contribution is that one co-obligor has discharged more than his [or her] fair equitable share of a common debt." Kafka v. Pope, 194 Wis. 2d 234, 243, 533 N.W.2d 491 (1995) (explaining that the right to seek equitable contribution "is premised on two conditions: (1) the parties must be liable for the same obligation; and (2) the party seeking contribution must have paid more than a fair share of the obligation").
¶ 101. The court of appeals has applied the foregoing two-part test for equitable apportionment of losses between two insurance companies. In McGee v. Bates, 2005 WI App 19, ¶ 1, 278 Wis. 2d 588, 691 N.W.2d 920, one insurance company sought contribution from another insurance company for a portion of the losses that it incurred by settling with plaintiffs. The court of appeals concluded that the two insurance companies shared liability for the same obligation because they both provided coverage to the same *91 person for the same loss. Id,., ¶ 9. The court of appeals then remanded the matter to determine whether the insurer seeking contribution bore more than its fair share of the losses. Id., ¶ 11.
C. Equitable Contribution
¶ 102. Given the foregoing equitable principles, I would remand the issue of equitable contribution to the circuit court to apportion defense costs between the two primary insurers, Millers First and Menard, who insured the same entity, Menard, and who had primary obligations to defend against Burgraffs claims. See Nucor Corp. v. Emp'rs Ins. Co. of Wausau, 296 P.3d 74, 84 (Ariz. Ct. App. 2012).
1. Standard of review
f 103. Whether equitable contribution may be applied in a given factual context is a question of law for our independent review. McGee, 278 Wis. 2d 588, f 4; Am. Simmental, 282 F.3d at 586.
2. Kafka/McGee test
¶ 104. To be entitled to equitable contribution of defense costs in the case before us, Millers First must prove two conditions: (1) both Menard and Millers First are liable as primary insurers for Menard's defense of Burgraffs claims; and (2) Millers First has paid more than its fair share of defending against Burgraffs claims.
a. liability for same obligation
f 105. In order to establish a shared liability for defense of Burgraffs claims, Millers First must establish that Menard, which was self-insured up to *92 $500,000, had a duty to defend itself when Burgraff was injured through the negligence of Menard's employee. In this regard, Menard's self-insured retention provides that it "shall be eroded by allocated claim costs including defense . . . costs." This demonstrates that Menard, as an insurer, has a duty to defend itself, as an insured. The majority opinion recognizes that Menard's self-insured retention gives Menard a duty "to pay . . . defense costs arising from an occurrence."[14]
¶ 106. This reasoning is supported by Hillegass v. Landwehr, 176 Wis. 2d 76, 85, 499 N.W.2d 652 (1993), where we concluded that self-insurance is other collectible insurance and should be treated the same as if it were contracted with a third-party insurer. The majority opinion also concludes that Menard's self-insured retention constitutes "other applicable liability insurance," thereby rendering Menard a concurrent primary insurer, as is Millers First.[15] Millers First and Menard each provides coverage for third-party liability as concurrent primary insurers, with Millers First being responsible for one-sixth of third-party liability and Menard being responsible for five-sixths of such obligation.[16] As the majority opinion notes, but for the fortuitousness of Millers First's policy providing one-sixth coverage, Menard would have been obligated "to pay the first $500,000 worth of damages and defense costs arising from an occurrence."[17] I agree.
¶ 107. Furthermore, " [i]n the context of liability insurance, a primary insurer generally has the primary duty to defend the insured . . . ." 14 Couch on *93 Insurance § 200:35. I see nothing in Menard's self-insured retention that removes Menard's duty to defend itself. Furthermore, I fail to see the basis for the majority opinion's implicit assumption that, by Millers First accepting its defense obligations, Menard's defense obligations are somehow eliminated. Accordingly, I conclude that Menard and Millers First share the obligation to defend Menard from Burgraffs claims.
b. inequitable payment
¶ 108. When two persons share the same obligation and one obligor claims to have paid more than its fair share, a claim for equitable contribution may be made. Kafka, 194 Wis. 2d at 243. Many courts recognize equitable contribution to satisfy such a claim; however, courts employ differing methods to apportion defense costs between concurrent primary insurers. See Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 5:8 (database updated Dec. 2015) ("[M]ethods include pro rata allocation based upon contract limits, equal apportionment, and time on the risk.").
¶ 109. The majority of jurisdictions allocate defense costs based on the policies' apportionment of liability limits. See Lee R. Russ & Thomas F. Segalla, 15 Couch on Insurance § 217:9 (3d ed. 1999). "The courts using this method find that each insurer should bear the costs of defense in proportion to its contract limits." Seaman & Schulze, § 5:8.
¶ 110. As between Millers First and Menard, there is $600,000 of combined coverage for liability awards, with one-sixth of the total liability exposure being Millers First's and five-sixths of the liability *94 exposure Menard's. Using the one-sixth/five-sixths ratio, Millers First would be liable for one-sixth of the total defense costs paid by Millers First and Menard, and Menard would be responsible for the balance.
¶ 111. Alternatively, based upon each insurer's separate duty to defend the insured, some courts allocate defense costs equally. Id. As noted, there are various other methods by which courts apportion defense costs between insurers. Id. However, choosing how to allocate the total defense costs between Millers First and Menard may require fact-finding that is not appropriate in this review. Md. Cas., 81 Cal. App. 4th at 1094 (explaining that circuit court has "broad discretion" in determining how to properly allocate defense costs). Therefore, were I writing for a majority of the court, I would remand to the circuit court to make the findings necessary to determine how, based on equitable contribution, the total defense costs should be allocated between Millers First and Menard.
f 112. Contrary to the majority opinion, I would not preclude Millers First from seeking equitable contribution because it breached its duty to defend by withdrawing prior to the exhaustion of its $100,000 limit of liability.[18] Of course, in some instances, it may be inequitable to permit an insurer to benefit from pro rata allocation of defense costs where that insurer has refused to defend the insured at all. See Cargill, 784 N.W.2d at 354; Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 940 F. Supp. 2d 898, 929-30 (D. Minn. 2013). However, that did not occur here, as Millers First fully defended Menard until it was dismissed from the lawsuit by the circuit court.
*95 f 113. The effect of the majority opinion is to remove Menard's duty as a primary insurer to defend itself. In so doing, the majority opinion treats two primary insurers very differently and by its directions on remand, inequitably imposes 100% of defense costs on the fortuitous insurer, Millers First. Even in instances where an insurer has breached its duty to defend, courts apportion defense costs between insurers where it is equitable to do so. See, e.g., Cont'l Cas. Co., 940 F. Supp. 2d at 929-30 (explaining that barring an insurer from seeking pro rata allocation, where that insurer has significantly contributed to defense, does not "comport with the equitable nature of contribution").
¶ 114. In Nucor, 296 P.3d at 84-85, the court permitted an insurer, which previously had breached its duty to defend, to seek equitable contribution from other, concurrent primary insurers that had likewise refused to defend the insured at various points in time. In rejecting the argument that an insurer was not entitled to pro rata apportionment after breaching its duty to defend, the court reiterated the overarching purpose of equitable contribution, which is "to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." Id. at 85 (internal quotation marks omitted) (quoting Fireman's Fund Ins. Co. v. Md. Cas. Co., 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998)).
¶ 115. Similar to the court in Nucor, I would not preclude Millers First from seeking equitable contribution simply because Millers First did not continue to defend until its limit of liability was reached. Menard had a concurrent obligation to defend that should not be overlooked. Precluding pro rata allocation here *96 permits Menard to foist a mutual obligation wholly onto Millers First, thereby profiting at the expense of Millers First. See Cont'l Cas., 940 F. Supp. 2d at 929 (explaining that such a holding "would not accomplish substantial justice").
¶ 116. Additionally, I recognize that "[a] breach of the obligation to defend should not be encouraged, but the rule which allows an insurer to avoid the costs of defense tends to encourage an avoidance of the insurer's responsibilities." Nat'l Indem. Co. v. St. Paul Ins. Cos., 724 P.2d 544, 545 (Ariz. 1986). While erroneously asserting that " [o]nly Millers First breached its duty to defend,"[19] the majority opinion precludes pro rata allocation of defense costs between concurrent primary insurers who have the same obligation to defend against Burgraff s claims.[20] The majority opinion offers few insights for future insurers who may find themselves in a similar situation.
¶ 117. Finally, I note that Menard relies on our statements in Plastics Engineering for the proposition that Wisconsin law does not allow pro rata allocation of defense costs. In Plastics Engineering, the sole insurer sought to pay only those costs that were incurred in defending claims that were covered under the insurer's policy, while excluding defense costs for uncovered claims. Plastics Eng'g, 315 Wis. 2d 556, ¶ 51. "Under Wisconsin law, if coverage exists, an insurer must defend the entire suit even though some of the allegations fall outside the scope of coverage." Id. at ¶ 60. *97 However, our statements in Plastics Engineering have nothing to do with equitable contribution of defense costs for Burgraffs litigation because here there are two primary insurers, both with a duty to defend.
III. CONCLUSION
¶ 118. I concur in the majority opinion's conclusion that Millers First breached its duty to defend by withdrawing its defense prior to exhausting its $100,000 limit of liability. I also concur in the majority opinion's conclusion that Menard's self-insured retention constitutes "other applicable liability insurance" under Millers First's "other insurance clause."
f 119. However, I write in dissent because, contrary to the majority opinion, I conclude that Wisconsin has applied equitable contribution to other shared obligations and should apply it to defense costs between two primary insurers, Millers First and Menard. Millers First and Menard insured the same entity, Menard; they had the same primary obligation to defend Menard against Burgraffs claims; and Millers First contends that it paid more than its fair share of defense costs. Therefore, I conclude that the matter should be remanded to the circuit court to determine how best to allocate the total defense costs incurred by Millers First and Menard. Accordingly, I respectfully concur in part and dissent in part from the majority opinion.
¶ 120. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this opinion.

 Majority op., ¶ 3.

 Prior to Millers First's acceptance of Menard's tender of defense, Menard's in-house counsel appeared for Menard on the merits, as well as with respect to coverage issues.

 Id. ¶ 69.

 Id.

 Id.

 See id., ¶¶ 32, 43, 79.

 Id., ¶ 14 (emphasis added).

 I recognize that a minority of jurisdictions have rejected the equitable contribution theory as a basis for apportioning defense costs. Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 16:6 (database updated Dec. 2015); Lee R. Russ & Thomas F. Segalla, 14 Couch on Insurance § 200:35 (3d ed. 2007).

 As indicated in this writing's citations, hard copies of the Third Edition of Couch on Insurance that are available to the court exhibit varying dates of publication.

 Majority op., ¶¶ 14, 32, 43, 79.

 Id. ¶ 72.

 Id. ¶ 14.

 Id., ¶ 14.

 Id., ¶¶ 32, 43, 79.

 Millers First and Menard do not dispute this apportionment of coverage for third-party liability.

 Id., ¶ 14.

 Id., ¶¶ 71-74.

 Id., ¶ 76. Menard had the same duty to defend as Millers first. However, Menard provided no defense until after Millers First was dismissed from the lawsuit, and the majority opinion allows Menard to ignore the obligation to contribute to its own defense.

 Id., ¶¶ 54, 69.