PER CURIAM.
¶1 Menard, Inc., appeals from a summary judgment determining there was no coverage under a business auto insurance policy for claims of negligent ice and snow removal against Matthew Neumann, Sr., the named insured of 1st Auto & Casualty Insurance Company (1st Auto). Menard contends genuine issues of material fact precluded summary judgment.[1] We disagree and affirm.
BACKGROUND
¶2 Marvin Wolff alleged that he sustained injuries when he slipped and fell outside a Menard store. Wolff and his wife sued Menard and Neumann, advancing claims of negligence against both and a violation of Wisconsin's Safe Place Statute against Menard. A second amended complaint added 1st Auto as a defendant, alleging it had issued a liability insurance policy to Neumann.[2] Neumann was allegedly responsible for snow and ice removal on portions of Menard's premises pursuant to a written Snow Plowing Agreement.
¶3 The circuit court bifurcated the issue of insurance coverage from the underlying action on the merits and stayed liability proceedings pending resolution of the coverage issues. 1st Auto subsequently sought summary judgment, arguing that Wolff fell on a sidewalk reserved for pedestrian traffic, and that Neumann had no responsibility for removing snow or ice from the sidewalks on the property. 1st Auto further noted that its business auto insurance policy issued to Neumann provided coverage for damages "resulting from the ownership, maintenance or use of a covered 'auto.' " Therefore, 1st Auto argued there was no coverage under its policy for Wolff's claim.
¶4 After a hearing, the circuit court determined there was no genuine issue of material fact regarding where Wolff fell, as Wolff had provided a direct, unequivocal statement in his deposition that the accident happened on the sidewalk. The court also determined there was no genuine issue of material fact that Neumann had no responsibility for removing snow or ice from the sidewalk, but rather only from the parking lot. Accordingly, the court concluded there was no coverage under 1st Auto's business auto policy, and it granted summary judgment dismissing 1st Auto as a defendant. Menard now appeals.
DISCUSSION
¶5 Under WIS. STAT. § 802.08(2) (2017-18), summary judgment shall be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Green Spring Farms v. Kersten , 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). We review summary judgments de novo. Lambrecht v. Estate of Kaczmarczyk , 2001 WI 25, ¶21, 241 Wis. 2d 804, 623 N.W.2d 751.
¶6 Menard argues a question of fact exists as to where Wolff fell. Menard concedes Wolff testified in his deposition that he fell on the sidewalk. Nevertheless, Menard argues "his pleadings, interrogatory answer, and medical records indicate that the fall occurred in the store's parking lot." According to Menard, this "clearly contradicts" Wolff's deposition testimony, presenting a genuine issue of material fact.
¶7 At his deposition, Wolff unequivocally testified as to the exact location of his fall. Wolff marked a red rectangle on an aerial photograph of the Menard's location-marked for identification as deposition Exhibit 1-depicting where Wolff parked his car upon arriving at the Menard store. Wolff then drew a dotted line depicting his walk "from my car right over to the sidewalk, and that's where I fell." Wolff indicated he fell "right near the doorway." He further stated, "There's a difference between asphalt and concrete. The concrete is what I consider a sidewalk."
¶8 Wolff then specifically marked an "X" on Exhibit 1 where he actually fell to the ground, just to the left of the right-hand entrance to the store and well within the sidewalk area. The following exchange then occurred:
Q: There is a dot with a black X on the spot where you fell; is that correct?
A: Yes, sir.
Q: Earlier you were describing the difference between the sidewalk area and the parking lot area; is that right?
A: Yes, sir.
Q: And how did you describe that again? Could you repeat that.
A: The parking lot is asphalt. The sidewalk was concrete.
Q: Okay.
A: It's a concrete surface.
Q: And right next to the sidewalk area where you fell there is an asphalt driveway that's got some crosshatching paint on it to designate, I assume, pedestrian walkways?
A: Yes, sir.
Q: And that would be on what you describe as the parking lot area, correct?
A: Yes, sir.
Q: And right on Exhibit 1 to the top of that is the sidewalk, which is concrete?
A: Yes, sir.
¶9 Despite the foregoing, Menard argues that a general allegation in Wolff's complaints raises a genuine issue of material fact as to the location of Wolff's fall. The complaints each alleged that Wolff "was walking through the parking lot toward the entrance of the aforementioned Menard in Franklin, Wisconsin, when he slipped and fell in a dangerous and negligently maintained area, causing him to sustain serious and permanent injuries." Similarly, Menard seeks to rely upon Wolff's interrogatory responses, wherein he stated Menard was negligent because its "parking lot had unsalted ice on the ground." Finally, Menard points to a physician's note in Wolff's medical records that remarked "Mr. Wolff fell in a Menard's parking lot ...."
¶10 These vague references to a general location such as the "parking lot" do not put into dispute Wolff's sworn, specific and uncontroverted deposition testimony as to the exact location where the fall occurred. Such references are of little or no weight when the uncontroverted deposition testimony makes the assertion no more than a remote possibility. See Torgerson v. Journal/Sentinel, Inc. , 210 Wis. 2d 524, 551-52, 563 N.W.2d 472 (1997). Indeed, to raise a genuine issue of material fact based on inferences from vague references would require the court or a jury to ignore Wolff's unequivocal deposition testimony as to the exact location marked on Exhibit 1, and merely speculate as to another location on the premises. The circuit court properly concluded there was no genuine issue of fact as to the location of the fall.
¶11 Menard also argues a genuine issue of material fact exists regarding the scope of Neumann's snow plowing responsibilities. Menard acknowledges that Neumann testified in his deposition that he had an oral agreement with Menard's Franklin location that its store employees would blow the snow from the sidewalk into the parking lot, and then Neumann's company would push the snow toward a pond located on the property. However, Menard argues that "[w]hen asked [at his deposition] whether the oral agreement covered anything else, Neumann responded, 'no.' " Menard then points to its written form contract entitled "Snow Plowing Agreement," which Menard contends required Neumann "to salt the Menard property, including the sidewalk, the area by the store's front entrance and exit, and the parking lot."[3] Thus, Menard argues that "any oral agreement that [Neumann] had with Menard pertained to snow removal, and not salting." Menard also argues that 1st Auto did not present any evidence to support its contention that a vehicle was not used to maintain the sidewalks, because "a reasonable inference is that the salt and sand spreader is attached to a vehicle."
¶12 Menard misrepresents the record as to the oral agreement. In his deposition, Neumann stated he had worked in snow removal for twelve Menard stores, and that he first started working for Menard stores in 1995. Neumann stated he was to provide services when the snow accumulated more than one inch, and that he worked under the direction of the store managers. The following exchange then occurred:
Q: In the contract that you had with the Franklin Menards store, was there some sort of oral agreement regarding either snowplowing or salting aside from the written agreement?
A: At Menards in Franklin, Speedway Menards they call it, they would service all their sidewalks and then we would service the parking lot.
Q: This was an oral agreement you had with the-I think you called it the Speedway Menards?
A: Well, they don't pay us to do the sidewalks. Menards had their own crew for sidewalks, and we would do the parking lot.
¶13 Neumann further testified that during the winter season at issue in the present case, the Franklin location was the only store Neumann serviced for Menard. Neumann stated that the written Snow Plowing Agreement was signed on behalf of Menard by an individual named Phillip. Neumann also stated that throughout the season there were three managers he dealt with at the Franklin Menard store, and "[w]hoever was on duty for the store would take responsibility of directing our services." Neumann may have "talked to Phillip on some days, Greg on other days, another manager on other days." The following exchange then occurred:
Q: With regard to when you signed this contract with that gentleman by the first name of Phillip at Menards, did you have any discussions with him regarding your responsibilities of either maintaining the plowing and salting of the driveway, and not plowing or salting the sidewalks?
A: Menards staff would do the sidewalks. We would do the-[it's] standard procedure at all Menards stores.
Q: Right. But my question is: Did you have any conversations with this gentleman, Phillip, at the time of signing this contract regarding not having to do the sidewalks?
A: Well, we'd walk the parking lot. And of course they would tell us, "you guys don't do the sidewalks. After we blow the sidewalks, you guys push the snow off the road."
Q: So when you executed this contract, you actually walked the area of the property with Phillip to talk about where you would plow and where you wouldn't?
A: Yes. You have to make sure you don't put the snow in the wrong spot.
Q: When you would be plowing on snowy days at the property, would you see Menards employees removing snow and salting sidewalks?
A: Yes.
¶14 Neumann was also asked during his deposition about when he first became aware of Menard's policy of snow removal and salting of sidewalks:
Q: With regard to this understanding that you had that, at all the Menards locations, you were not to take care of any snow or salting-any snow removal or salting on the sidewalk, how did you first become aware of that policy at Menards?
A: They tell you that when you put in an estimate for the store.
Q: So when was the first time you became aware of that policy? Do you remember?
A: The first time we plowed a Menards store, they told us.
Q: Was that something that was told to you by a manager?
....
A: It was brought to our attention by Marty Fischer, corporate, along with the store directors.
....
A: It's Menard's policy throughout the corporation that they do their own sidewalks.
¶15 The unequivocal deposition testimony of Neumann established that he worked under the direction of Menard store managers, and before the first time Neumann plowed for Menard, Menard management told him that: (1) Menard had its own crews for the sidewalks; (2) Neumann had no responsibility to maintain the sidewalks in any respect; and (3) that it was Menard's policy throughout the corporation to do its own sidewalks. Neumann also unequivocally testified that with regard to the Franklin Menard location, he walked the property with Menard management "to talk about where you would plow and where you wouldn't." In opposing summary judgment, Menard was in a position, as the other party to the agreement with Neumann, to provide affidavits or other evidence regarding its own management's discussions with Neumann concerning responsibility for removal of snow and salting on the sidewalks. Menard presented none.
¶16 In any event, there is no evidence in the record that a vehicle was used to maintain or salt the sidewalk area, as would be required to implicate coverage under the 1st Auto policy. Menard's suggestion that salting is the type of conduct that is reasonably consistent with the inherent use of a vehicle is unsupported in the record, and we will not further address it. See M.C.I., Inc. v. Elbin , 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988).
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

As noted during the hearing on summary judgment, no other party opposed the partial summary judgment motion.

Neumann had potential coverage under two insurance policies; American Family Mutual Insurance Company provided business liability coverage for claims that did not arise from the use of an automobile.

Menard's written Snow Plowing Agreement provided in part as follows:
RECITALS
Menard desires to have snow plowing and ice removal and related services performed at Menard's above place of business including parking lot, loading and storage sites, sidewalks and outside yard (if applicable) and other common areas used by Menard's customers and the general public, employees and agents in operating a retail home improvement center.
Contractor agrees to perform these services upon request by Menard's General Manager under the terms and conditions set forth in this Contract.
....
The contractor MUST use Menards salt and sand to remove ice from sidewalks, loading and storage sites and the front store entrance and exit, and outside yard and the parking lot. Salt and sand will be applied when authorized by the Menard store General Manager, utilizing the Menards salt and sand.